UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.                                          Case No. 25-CR-0089-LA

HANNAH C. DUGAN,

    *Defendant.*

---

**DEFENDANT'S FIRST MOTION IN LIMINE**

---

**I.**

**INTRODUCTION**

Hannah Dugan here both makes and explains her first motion *in limine*. That one warrants close attention and is not routine. It addresses an unusual issue peculiar to this unusual case. She also renews her earlier motion to dismiss as barred by judicial immunity. This is a combined motion and brief, so she submits no separate supporting memorandum.

**II.**

**MOTIONS IN LIMINE**

Judge Dugan acted lawfully—doing acts that were part of her job, to paraphrase the magistrate judge, whose recommendation this Court adopted—as to each of the five specific acts that Count 2 alleges. Because lawful acts do not and cannot obstruct or hinder under

Seventh Circuit cases, the government (1) may not rely on or even introduce evidence of these lawful acts.[*] Alternatively, the government (2) may not contest that they were official acts within a Wisconsin state judge's job (even if it is permitted to argue that they were done "corruptly").

The indictment here specifically pleads the arrest of an immigrant, E.F.R., as critical to both counts. In Count 1, the indictment contends that Judge Dugan "concealed E.F.R., a person for whose arrest a warrant and process had been issued under the provisions of the law of the United States, so as to prevent the discovery and arrest of E.F.R." And in Count 2, the indictment frames the facts similarly, contending that Judge Dugan corruptly endeavored to influence, obstruct, and impede the due and proper administration of the law in a particular way, by obstruct*ing* "the administrative arrest of E.F.R. for purposes of removal proceedings conducted by the United States Department of Homeland Security, by committing affirmative acts to assist E.F.R. to evade arrest."

---

[*] Because the indictment lists only five specific acts, and only in Count 2, this may look like a motion to dismiss in disguise. Judge Dugan would make no apology for that and she acknowledges that possible effect. But in fact, the government conceivably may have some evidence of *unofficial* acts or corruption to support its indictment. For example, the Attorney General of the United States—presumably in a position to know what evidence the government has—claimed on Fox News's *America Report* shortly after Judge Dugan's arrest that Judge Dugan first took E.F.R. "back into her chambers" and was "harboring a fugitive;" Bondi also described judges like Hannah Dugan as "deranged." Jason Lalljee, *"Deranged" Milwaukee Judge's Arrest a Warning to Others, Bondi Says*, AXIOS (April 25, 2025), available at https://www.axios.com/2025/04/25/hannah-dugan-trump-bondi-fbi-arrest; KARE 11, *FBI Arrests a Milwaukee Judge Accused of Helping a Man Evade Immigration Authorities*, on YouTube with clip from Fox News, available at https://www.youtube.com/watch?v=YgxZCHJEpPI.

If the government indeed has any such evidence (the discovery disclosed to date suggests that it does not), that would be an unofficial act and possibly admissible if not foreclosed by the ordinary rules of evidence. But sending E.F.R. and his lawyer out a back door into a hallway that put them into the same public hallway at the same time as the courtroom doors would have, less than 12 feet to the right of the main courtroom doors as viewed from that hallway? Where at least two agents saw E.F.R. emerge and followed him to the elevator? That is a far cry from harboring a removable alien in chambers.

A. **Judge Dugan Had a Legal Right to Do the Five Specific Acts the Indictment Alleges, So She Did Not Support the Crimes Charged in Counts 1 and 2.**

1. As to the right of Judge Dugan to do what she had lawful authority to do, to engage in acts that were part of her job as a Wisconsin judge, Seventh Circuit cases provide strong support. As to each of the five specific acts the government relies on in Count 2 (and presumably, by extension in Count 1 as well), Judge Dugan was within the scope of her job. And the Seventh Circuit has been quite clear: an act that one has a legal right to undertake does not obstruct or hinder. *United States v. Edwards*, 869 F.3d 490, 492–99 (7th Cir. 2017); *United States v. Matthews*, 505 F.3d 698, 705–06 (7th Cir. 2007). For that matter, the U.S. Supreme Court agrees. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705–06 (2005).

*Edwards* bears closely on Count 2 here, with its unusual *mens rea* element of "corruptly." In that case, the court considered two witness tampering convictions under 18 U.S.C. § 1512(b)(3), a statute similar to § 1505, which Count 2 charges. As the trial judge (Hon. Richard Posner, as it happens, sitting in the district court by designation) submitted those counts, the jury could have convicted without finding any persuasion, hindering, or delaying that was done "corruptly" as § 1512(b)(3) also requires.

That omission from the jury instructions was not harmless error. *Edwards*, 869 F.3d at 492–93. The instructions failed to "convey the requisite consciousness of wrongdoing." *Id.* at 498. "Whatever the contours of the corrupt persuasion element," the *Edwards* court continued, "the error here was that the jury instructions did not say anything about wrongfulness at all: no reference to improper purpose, no requirement of

deception, and no mention of conscious wrongdoing. The instructions left the door open for the jury to convict Edwards on the basis of innocent rather than corrupt persuasion." *Id*. at 499.

Here, because Judge Dugan had a right to do each of the five acts—they all were within the scope of her authority as a Wisconsin judge—there necessarily was no consciousness of wrongdoing, no wrongfulness, no deception. The government seems to have no evidence of corruption at all, as the Supreme Court, the Seventh Circuit, and common usage all define it.

*Matthews* relates to both counts here. It concerned the Chief of Police of East St. Louis. He tried to help a friend who was an auxiliary police officer but also a convicted felon, and should not have been carrying a gun. Eventually, Chief Matthews faced charges for conspiracy to obstruct justice under 18 U.S.C. § 371, attempted obstruction of justice under 18 U.S.C. § 1512(c)(1) & (2), and perjury before a grand jury. *Matthews*, 505 F.3d at 701–04. A jury convicted him on all three counts.

On appeal, Matthews argued that the jury instructions on obstruction of justice understated the necessary mental state. *Id*. at 704. In essence, he contended that the definition of "corruptly" did not adequately separate innocent obstructive conduct from criminal obstructive conduct. Conceding that this argument was "not without force," *id*. at 705, in the end the Seventh Circuit rejected it. The Court reviewed the Supreme Court's rejection of a different jury instruction on the term "corruptly" in *Arthur Andersen*, 544 U.S. at 705, and then explained why the jury instruction requiring that the defendant's obstruction be "wrongful" sufficed:

> As explained in *Arthur Andersen,* under limited circumstances, a defendant is privileged to obstruct the prosecution of a crime. That privilege flows from the defendant's enjoyment of a legal right—such as the right to avoid self-incrimination. By including the word "wrongfully" in the definition of "corruptly" and criminalizing only the act of "wrongfully impeding the due administration of justice," the instructions directed the jury to convict only those who have no legal right to impede justice.

*Id.* at 706.

Although the trial court there had used the term "wrongfully" only, *Matthews* viewed the jury instruction as meeting the higher standard of acting "dishonestly" that *Arthur Andersen* imposed to prevent convictions of those who had a legal right or privilege and thus engaged only in innocent obstruction, so to speak. *See Arthur Andersen*, 544 U.S. at 706, discussed in *Matthews*, 505 F.3d at 705.

This circuit's pattern jury instruction for the elements of 18 U.S.C. § 1503 offenses cite and rely on *Matthews*, which again was in relevant part a prosecution under § 1512(c). *See* SEVENTH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS at 698–99, 712, 724, 725–26 (2023) (as to § 1503 generally, and as to definition of "corruptly" under subsections of 18 U.S.C. § 1512). Although there are no pattern instructions in this circuit for 18 U.S.C. §§ 1071 or 1505, the specific charges in Counts 1 and 2, there is no reason to think that the rule for these closely related offenses would be—or should be—any different.

So, Judge Dugan moves to exclude all government evidence that she impeded or in any way hindered, within the scope of Counts 1 and 2, the efforts of federal agents to arrest E.F.R. in a state courthouse's public hallway by engaging in the five lawful acts that the indictment lists. As both the magistrate judge and this Court now have held, without government objection, the five acts alleged in Count 2 were "all part

5
Case 2:25-cr-00089-LA   Filed 11/07/25   Page 5 of 9   Document 58

of a judge's job;" each was an official act, in other words. Dkt. 43 at 30 (July 7, 2025); Dkt. 48 (August 26, 2025). She had a legal right to engage in those acts, unlike the police chief in *Matthews* who for well over two months took repeated steps, including enlisting others, to conceal a gun from federal investigators to help his friend escape legitimate prosecution. *Matthews*, 505 F.3d at 701–03, 706–07. In sharp contrast, each of the five acts listed in this indictment were ones that Judge Dugan had a legal right to undertake in the minutes after she learned that ICE agents were outside her courtroom. She was within the lawful powers of her job.

This is not a new concept. It is the public authority doctrine, at bottom. As Justice Sotomayor has noted in dissent, someone like an ex-President "may be able to rely on a public-authority exception from particular criminal laws." *Trump v. United States*, 603 U.S. 593, 672 & n.3 (2024) (Sotomayor, J., dissenting) ("*Nardone* v. *United States*, 302 U.S. 379, 384 (1937) (explaining that public officers may be 'impliedly excluded from [statutory] language embracing all persons' if reading the statute to include such officers 'would work obvious absurdity as, for example, the application of a speed law to a policeman pursuing a criminal or the driver of a fire engine responding to an alarm'); *see also* Memorandum from D. Barron, Acting Assistant Atty. Gen., Office of Legal Counsel, to E. Holder, Atty. Gen., Re: Applicability of Federal Criminal Laws and the Constitution to Contemplated Lethal Operations Against Shaykh Anwar al-Aulaqi 12 (July 16, 2010) (interpreting criminal statute prohibiting unlawful killings 'to incorporate the public authority justification, which can render lethal action carried out by a government official lawful in some circumstances')").

So, as to these five named official acts, the evidence the government seeks to offer is not relevant to any proper issue, FED. R. EVID. 401, 402, and only could mislead the jury by inviting it to convict when Judge Dugan had a lawful right to act as she did. That serious risk of mischief and unfair prejudice would far outweigh any indirect or attenuated probative value the evidence might have. FED. R. EVID. 403.

2. Alternatively, if the Court allows the government to offer evidence of those five acts, the government may not argue or offer evidence contending that they were anything other than official acts. Under this less favored alternative, the government could contend that Judge Dugan did one or more "corruptly," for purposes of Count 2. But it cannot contest that they in fact were acts within the scope of her authority as a Wisconsin judge. Law of the case establishes that clearly here—with nary an objection from the government. Dkt. 43 at 30; Dkt. 48 at 27.

### B. Judicial Immunity Bar Renewed.

If the Court grants the motion in limine set out in part II.B here, the government will not necessarily face dismissal for want of any evidence. It is possible that it has evidence of other obstructive, hindering, or concealing acts that were not part of Judge Dugan's job; not official acts, but unofficial. If it does, that evidence would remain admissible as to the conduct elements of the two charges, and the government would be left to persuade a jury of the mental elements and the rest.

This is a good time to renew Judge Dugan's earlier motion to dismiss both counts as barred by judicial immunity, then. As the magistrate judge found—a conclusion that this Court adopted without any objection from the government—the only acts that

the indictment pleads all were part of a Wisconsin judge's job. They were official acts and violated no individual rights that the Reconstruction Amendments secure. In renewing her motion to dismiss, Judge Dugan relies on all of her previous briefs on that issue.

### III.

#### CONCLUSION

Judge Dugan asks the Court to grant this first motion *in limine*, for the reasons she explains. The government cannot rely on Judge Dugan's own lawful conduct, because as a matter of law, acts that a defendant has a legal right to undertake do not hinder or obstruct under the two statutes that this indictment charges. Finally, the Court should reconsider its August 26, 2025 decision and dismiss this indictment as barred by judicial immunity.

Dated at Madison, Wisconsin, November 7, 2025.

Respectfully submitted,

HON. HANNAH C. DUGAN, *Defendant*

 *s/ Dean A. Strang*
John H. Bradley
Wisconsin Bar No. 1053124
R. Rick Resch
Wisconsin Bar No. 1117722
William E. Grau
Wisconsin Bar No. 1117724
Dean A. Strang
Wisconsin Bar No. 1009868

STRANG BRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
(608) 535-1550

john@strangbradley.com
rick@strangbradley.com
william@strangbradley.com
dean@strangbradley.com

        *s/ Steven M. Biskupic*
        Steven M. Biskupic
        Wisconsin Bar No. 1018217

STEVEN BISKUPIC LAW OFFICE, LLC
P.O. Box 456
Thiensville, Wisconsin 53092
bisklaw@outlook.com

        *s/ Jason D. Luczak, Nicole M. Masnica*
        Jason D. Luczak
        Wisconsin Bar No. 1070883
        Nicole M. Masnica
        Wisconsin Bar No. 1079819

GIMBEL, REILLY, GUERIN & BROWN LLP
330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
(414) 271-1440
jluczak@grgblaw.com
nmasnica@grgblaw.com