UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

      v.                              Case No. 25-CR-89 (LA)

HANNAH C. DUGAN,

                Defendant.

## RESPONSE TO DEFENDANT'S MOTIONS *IN LIMINE*

On November 7, 2025, the defendant filed thirteen motions *in limine*. One was set forth in a stand-alone document (Dkt. 58), and the other twelve were included in a separate filing (Dkt. 59). The United States of America, by its counsel, hereby responds to all of the defendant's motions in this filing.

**1.      Because it is nothing more than a restyled version of her previously rejected immunity arguments, the Court should deny the defendant's First "Motion in Limine."**

During the time frame allocated for such motions by the Court, the defendant moved for dismissal of the indictment, asserting that she was immune from federal criminal prosecution for her actions on April 18, 2025, in the Milwaukee County Courthouse. The parties litigated the motion extensively, and the Court ultimately agreed with the government that the doctrine of judicial immunity did not shield the defendant from criminal prosecution. That ruling was made in late August. *See* Dkt. 48.

With trial a month away, the defendant has now filed a "motion in limine"—by her own admission, an "unusual" one—asking the Court to reconsider its judicial immunity ruling. Dkt. 58. Barring that, the defendant would like the Court to do the next best thing: invite the jury, through its instructions, to make irrelevant distinctions between official and unofficial conduct. *Id.*; *see also* Dkt. 57 (Defendant's Proposed Jury Instructions 4-5, 11-21). Such distinctions would encourage the jury to deem any conceivably "official" judicial act "lawful" and therefore beyond the scope of its consideration. In effect, this would confer partial judicial immunity and put much of the government's proof "off limits." Instead of going down this twisted path, the Court should reaffirm its carefully reasoned ruling on judicial immunity and craft jury instructions that are consistent with that ruling, as proposed by the government. Dkt. 55. The correct approach is to permit the jury to consider *all* of the defendant's conduct on April 18, 2025, in deciding whether she concealed/harbored an alien under Section 1071 or corruptly endeavored to obstruct or impede a proceeding under Section 1505.

In her first "motion in limine" and in her proposed jury instructions, the defendant repeatedly cites *United States v. Edwards*, 869 F.3d 490 (7th Cir. 2017), and *United States v. Matthews*, 505 F.3d 698 (7th Cir. 2007), for the proposition that "an act that one has a legal right to undertake does not obstruct or hinder." Dkt. 58 at 3. However, *Edwards* involved a jury that was not instructed as to the meaning of "corruptly" in 18 U.S.C. § 1512(b)(3) because the trial judge erroneously believed that this circuit's pattern instruction defining that term would not aid the jury.

The appellant in *Matthews* argued—unsuccessfully—that the "corruptly" instruction given in his case, which arose under 18 U.S.C. § 1512(c), failed to distinguish sufficiently between criminal and innocent acts of obstruction. Taken together, *Edwards* and *Matthews* stand for the proposition that defining the term "corruptly" to require "wrongful" conduct accurately reflects the law by ruling out as obstruction acts which ought not to be deemed criminal, such as an attorney advising his client to withhold documents pursuant to a valid claim of privilege. *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). These cases did not involve judges and certainly did not hold that official judicial acts are always immune in a Section 1505 or Section 1071 prosecution. They are jury instruction cases; not immunity cases. The jury in this case will be properly instructed as to the *mens rea* element if the Court instructs that the defendant must have acted "corruptly," *i.e.,* with an improper or wrongful purpose. 18 U.S.C. §1515(b); Dkt. 55 at 23-25.[1]

Moreover, as this Court observed when denying the motion to dismiss, "[t]here is no basis for granting immunity simply because some of the allegations in the indictment describe conduct that could be considered 'part of a judge's job.'" Dkt. 48 at 21. We know from bribery and other cases brought under Section 1505 that official acts, though lawful in and of themselves, can be "intertwined with" criminal conduct and thus evidence of a

---

[1] The defendant's Proposed Jury Instructions 7 & 11, however, go well beyond the statutory definition of "corruptly" by requiring, for instance, that the defendant must also have acted with the purpose of "procuring an unlawful benefit either for herself or for some other person." Dkt. 57.

3

crime. Dkt. 48 (p. 21).[2]  As the government has consistently argued, and these cases reflect, a judge may use judicial acts or tools as the means to accomplish an unlawful end. *Id.* Put another way, the defendant may have been *able* to do certain things *because of* her judicial role, but she was not privileged to do those things for an "improper purpose." 18 U.S.C. § 1515(b). "A judge no less than any other [person] is subject to the processes of the criminal law." *United States v. Hastings*, 681 F.2d 706, 711 (11th Cir. 1982).

The Seventh Circuit made similar observations about lawyers in *United States v. Cueto*, a case involving the question of "whether an attorney acting in his professional capacity could be criminally liable under … [18 U.S.C.] § 1503 for traditional litigation-related conduct that results in an obstruction of justice." 151 F.3d 620, 631–32 (7th Cir. 1998).  In that context, the Seventh Circuit noted that "[o]therwise lawful conduct, even acts undertaken by an attorney in the course of representing a client, can transgress § 1503 if employed with the corrupt intent to accomplish that which the statute forbids." *Id.* (citing *United States v. Cintolo*, 818 F.2d 980, 992 (1st Cir.1987) ("means, though lawful in themselves, can cross the line of illegality if … employed with a corrupt motive….")).

While this Court suggested that some form of "limited" immunity *might* attach to good-faith judicial actions done in the ordinary course of a judge's duties, *see* Dkt. 48 at 19-22, this is emphatically *not* a case where the defendant is being prosecuted for erroneous judicial acts done in good faith. *Braatelien v. United States*, 147 F.2d 888, 895 (8th

---

[2] In briefing on the motion to dismiss, defendant attempted to portray "graft or coercive sexual gratification" cases involving judges as categorical exceptions to a general rule of judicial immunity; rather than "examples of the types of prosecutions that have been brought against judges." Dkt. 48 at 5. This Court rejected that approach. *Id.*

Cir. 1945). To the contrary, the government alleges—and will prove—that the defendant intended to prevent an individual's discovery or arrest (Section 1071) and acted "corruptly," *i.e.*, with an improper purpose, in endeavoring to obstruct or impede a proceeding (Section 1505).

The official/unofficial distinction that pervades the defendant's proposed instructions reflects the notion that the defendant, because she is a judge, is immune from prosecution for her "official" acts *regardless of mens rea.* This Court has already disavowed that approach, which cannot be squared with the case law or the language of Sections 1071 and 1505. For these reasons, the Court should reaffirm its judicial immunity ruling, deny defendant's first motion *in limine*, and reject defendant's proposed instructions 4-5 and 11-21.

> **2.      Motion to exclude witnesses pursuant to Rule 615.**

The defense next moves to exclude non-party witnesses and to order them not to discuss their testimony with other potential witnesses during trial. As long as the Court exempts the case agent – FBI Special Agent Erin M. Lucker – pursuant to Federal Rule of Evidence 615(a)(2), the United States does not oppose this motion. *See Edwards,* 34 F.4th at 585 (Rule 615 exempts the government's case agent).

> **3.      Motion to provide the jury with written instructions.**

The defendant's third motion requests that the Court provide the jury with a written copy of its instructions for use during deliberations. The United States has no objection to this standard practice.

### 4. Motion to prohibit introduction of character evidence.

The defendant's fourth motion seeks to bar the introduction of "any character evidence, including other crimes, wrongs, or acts from witnesses that has not been deemed previously by the Court to pertain to an admissible purpose." Dkt. 59 at 1-2. To the extent this simply is meant as a request to apply Rule 404, the United States has no objection. However, the United States notes that Rule 404 does not apply to direct evidence of any element of the charged offenses. *See United States v. Ferrell*, 816 F.3d 433, 443 (7th Cir. 2015); *United States v. Adams*, 628 F.3d 407, 414 (7th Cir. 2010) (explaining that "if the evidence is admitted as direct evidence of the charged offense, Rule 404(b) is not applicable"). Of course, extrinsic evidence may also be admissible for "impeachment for bias, contradiction, or prior inconsistent statement." *United States v. McGee*, 408 F.3d 966, 982 (7th Cir. 2005).

### 5. Motion to preclude evidence of the defendant's violations of laws protecting victims' rights.

In her fifth motion, the defendant moves to prohibit the United States from arguing or eliciting opinion testimony that she violated Article I, Section 9m of the Wisconsin Constitution, otherwise known as Marsy's Law. The United States agrees that there should not be a "mini-trial" about whether the defendant violated Marsy's Law. However, as will be explained further below in response to her ninth motion *in limine*, how she handled E.F.R.'s hearing, and whether it was routine or "business as usual," is relevant to her intent.

E.F.R. was charged with three counts of battery-domestic abuse. The nature of

those charges necessarily implied that there were victims. Those victims were in the courtroom for E.F.R.'s hearing on April 18, 2025. The evidence at trial will demonstrate that the defendant never afforded those victims the opportunity to speak, let alone notify them that the hearing was even occurring. That omission is particularly significant because the issue of victims' rights would have been forefront on the defendant's mind due to the events in her courtroom that occurred earlier that same week.

The case to which the defendant refers – *Milwaukee County D.A.'s Office v. Circuit Court for Milwaukee*, Appeal No. 2025AP875-W – involved the defendant refusing to allow a victim (who had been threatened with a gun) to sit in her courtroom during opening statements at trial on April 15, 2025. The victim filed a Request for Remedy on Victims Rights Violation, and the violation notice was handed by the bailiff to the defendant. The defendant then addressed the victim directly in open court, stating that she was denying her claim as "untimely." It ultimately led, as the defendant correctly notes, to the District Attorney's Office filing a supervisory writ to the court of appeals. The court of appeals denied the writ as moot, and so did not rule on the merits of the claim.

At the next judge's meeting, on April 23, 2025, the subject of Marsy's Law was on the agenda. Amongst the materials provided to the judges about Marsy's Law was a memorandum all of the judges *had received previously*. It was dated May 12, 2020, from the Wisconsin Supreme Court, Office of Court Operations' legal advisor and addressed to all state court judges. The memorandum provided guidance to judges about Marsy's Law. It specifically addressed "[s]cheduling meetings/conferences that happen *off the record* with attorneys, judges, clerks, and/or judicial assistants," and specifically advised:

7

"Under Marsy's Law, *even scheduling meetings* could constitute a 'proceeding' that *the victim is entitled to receive notice of, attend, and make a statement at* . . . victims have a right to be heard at any proceeding during which their rights are implicated. Scheduling future hearings may implicate a victim's right to timely disposition of the case." (emphasis added).

The defendant handled E.F.R.'s case off the record, during which she quickly scheduled a future hearing without notifying the victims or the prosecutor. (The victim witness advocate saw E.F.R. exit through the jury door and had no idea what was going on.) Whether the treatment of E.F.R.'s victims was a routine practice, or an aberration, is relevant to her state of mind. Similarly, whether the treatment of E.F.R.'s victims was consistent with the guidance she received about Marsy's Law is likewise relevant to her intent. *See United States v. Proano*, 912 F.3d 431, 438-39 (7th Cir. 2019) (affirming district court's ruling that the defendant's "intent – willful or not – was the fact that could be made more or less probable by evidence of [the defendant's] training."); *see also United States v. Causey*, 748 F.3d 310, 316 (7th Cir. 2014) ("To be relevant, evidence need not conclusively decide the ultimate issue in the case, nor make the proposition appear more probable, but it must in some degree advance the inquiry.") (quoting *Thompson v. City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006)).

The defendant also argues that "[a]llowing the Government to discuss the potential effects of Judge Dugan's alleged conduct on a collateral third-party" is "substantially prejudicial" and will "confuse the issues and mislead the jury," citing Rule 403 of the Federal Rules of Evidence. It is unclear to whom the defendant is referring

8

when she references a "collateral third-party." If it is the effect that the defendant's actions had on the victim in the trial that occurred in the days preceding E.F.R.'s hearing, the United States agrees. The effect her actions had on that victim would not be relevant. However, again, the guidance she received about the rights victims are afforded under state law in criminal proceedings is relevant to her intent and would not confuse the jury or be unfairly prejudicial. *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) ("[m]ost relevant evidence is, by its very nature, prejudicial," and so the inquiry under Rule 403 is whether the evidence is "*unfairly* prejudicial to require exclusion.") (citations omitted; emphasis in original).

### 6. Motion to preclude questioning witnesses about whether they personally believe that the defendant is guilty.

The defendant's sixth motion requests that the Court prohibit the United States from questioning any witnesses about whether they personally believe she is guilty. The United States does not object, so long as the defendant is prohibited from doing the same; that is to say, the defendant may not question witnesses about whether they personally believe she is not guilty.

The United States' agreement with the defendant's motion is premised on its understanding that it is only based on the limitations of Federal Rules of Evidence 701 and 704(b), which are the rules the defendant cites in support. While not permitted to offer legal conclusions or opine on the application of statutory elements, lay witnesses may provide opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in

9

issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also United States v. Smith*, 150 F.4th 832, 847 (7th Cir. 2025). An expert witness may also not testify about the mental state of the defendant. Fed. R. Evid. 704(b).

In support of her motion, the defendant also cites *United States v. Young*, 470 U.S. 1 (1985). The Supreme Court's decision in *Young* addressed improper vouching made by both the prosecutor and defense counsel at trial. *Id.* at 6-8. The Supreme Court said that "[d]efense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case." *Id.* at 8. The Supreme Court also quoted the American Bar Association's Standard for Criminal Justice, which stated that it "is unprofessional conduct for a lawyer to express a personal belief or opinion in his client's innocence or personal belief or opinion in the truth or falsity of any testimony or evidence . . ." *Id.* at 10, n. 7. If, by citing *Young*, the defendant meant to also request that the Court expressly prohibit counsel for both parties to engage in improper vouching, the United States agrees that such a directive would be appropriate.

**7.      Motion to bar introduction of undisclosed expert testimony.**

The defendant's seventh motion seeks to prohibit the introduction of undisclosed expert testimony. The United States does not oppose this motion and does not intend to call an expert to render an opinion on any scientific, technical, or other issue requiring specialized knowledge within the meaning of Rule 702.

Although not expert testimony, to avoid any later claim of surprise, the United States notes that to the extent the parties fail to reach a stipulation, the government

10

anticipates calling its case agent to authenticate excerpts of recordings she made from the full digital audio recording (DAR) obtained from the Wisconsin Office of State Courts. Given that the full recording included inputs from multiple microphones (and both on the record statements and discussions off the record, including whispered discussions), defense counsel asked during discovery meetings whether it was possible to isolate, increase, or decrease the volume of the various inputs to focus on the relevant discussions. Counsel indicated that this would be helpful and expressed willingness to reach a stipulation as to these recordings.

The government's case agent was able to play the recordings on a computer and adjust the relative volumes of various inputs. The FBI then recorded (sometimes referred to as screen-captured) the resulting audio. If necessary, she will testify to the authenticity of the resulting excerpts. Although this is not an expert issue, the United States wanted to mention it here for the Court's awareness.

Similarly, as discussed in more detail in the context of responding to the defendant's eighth motion below, the United States will have one or more Immigration and Customs Enforcement (ICE) witnesses describe where the issuance and execution of the arrest warrant for E.F.R. fit in his overall immigration proceedings. However, that will not be in the form of expert opinion testimony. Rather, to the extent it is an opinion at all, it would be a permissible lay opinion. *See United States v. Estrada,* 969 F.3d 1245, 1271-72 (11th Cir. 2020) (proper to admit lay opinions from federal government employees explaining the process and policies related to unblocking licenses and visa applications and the importance placed by their agencies on various requirements

11

because the testimony was not based on "specialized knowledge" within the meaning of Rule 702, but rather simply an explanation of the policies and practices of their agencies and a proper lay opinion about the impact the defendant's conduct would have on their agencies).

> 8. **Motion to bar expert testimony or lay opinions about the validity of administrative warrants and who has the authority to issue them.**

The defendant's eighth motion seeks to prohibit the United States from "eliciting expert testimony or a legal opinion from lay witnesses regarding administrative warrants, including their validity and who has authority to issue them." Dkt. 59 at 3. The United States agrees that no expert opinion would be appropriate on any legal issues such as these. After all, that is the exclusive role of the district court judge, who will address the relevant law in the jury instructions. *See United States v. Bloom*, 846 F.3d 243, 255 (7th Cir. 2017) (explaining that the meaning of statutes and regulations is a subject for the court, not for experts, and that the "only legal expert in a federal courtroom is the judge"); *United States v. Sinclair*, 74 F.3d 753, 758, nt. 1 (7th Cir. 1996) (noting "Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues" and that experts "cannot testify about legal issues on which the judge will instruct the jury") (additional citations omitted).

The two legal matters cited in the defendant's motion fall squarely in that category. Pursuant to the Immigration and Nationality Act (INA), the "Secretary of Homeland Security and her delegates, including ICE agents, are by statute authorized to arrest and detain an alien with or without a warrant." *N.S. v. Dixon*, 141 F.4th 279, 282 (D.C. Cir.

2025) (explaining the legal framework and citing 8 U.S.C. § 1226). Under the INA, and its corresponding regulations, only designated officials (all of whom must have completed immigration law enforcement training) are authorized to issue administrative arrest warrants – known as Forms I-200 and I-205 – based on probable cause findings as part of the civil immigration process. *See id.; see also* 8 C.F.R. § 287.5(e)(2) (specifying the officials authorized by law to issue such warrants).

The constitutionality of this legal framework is not in doubt, and its validity has not been challenged here. *See, e.g., Castanon Nava v. Dep't of Homeland Security*, 2025 WL 2842146 *13 (N.D. Ill. Oct. 7, 2025) (explaining that "[c]ourts from the Supreme Court to the Seventh Circuit to district courts around the country have … recognized for decades that the authority to issue I-200 administrative warrants derives from" the INA and its corresponding regulations); *see also Abel v. United States*, 362 U.S. 217, 232 (1960) (discussing the statutory and regulatory basis for administrative warrants, noting that statutes allowing for the Executive Branch to order arrest of deportable aliens date back to 1798, and describing the "overwhelming historical legislative recognition of the proprietary of administrative arrest for" such individuals).

As such, there is no need for any "opinion" from an expert or lay witness on the validity of an administrative warrant like the I-200 issued for E.F.R. Rather, that is a legal determination for the Court and the proper subject of an instruction to the jury, namely that an I-200 is a valid federal warrant or process for purposes of Count One.

Nor is there a need for an opinion on what officials are authorized to issue such warrants. Under 8 C.F.R. § 287.5(e)(2)(xxxii), supervisory detention and deportation

13

officers are authorized to issue administrative warrants, and the Court should so instruct the jury. The United States had not initially proposed a specific instruction on 8 C.F.R. § 287.5(e)(2)(xxxii) because it had not realized that this could truly be in dispute. In any event, the United States intends to establish at trial that Anthony Nimtz, who found probable cause and signed the warrant at issue, is a Supervisory Detention and Deportation Officer.

On a related note, the defendant has proposed to call a legal "expert" on a related matter of law. Count Two requires proof of a pending proceeding. This is a very broad term as used in Section 1505. *See, e.g., United States v. Senffner*, 280 F.3d 755, 760-762 (7th Cir. 2002) (analyzing the broad nature of "proceeding"); *Rice v. United States*, 356 F.2d 709, 712, 715 (6th Cir. 1966) (explaining that "proceeding" is a "very broad" and "comprehensive term meaning the action of proceeding—a particular step or series of steps, adopted for accomplishing something" and simply refers to "proceeding in the manner and form prescribed for conducting business before the department or agency, including all steps and stages in such an action from its inception to its conclusion").

Despite clear law that would prohibit it, the defense has indicated that it plans to call an expert to opine that there was no pending proceeding in this case, as that term is used in Section 1505. The United States is separately moving to exclude that testimony, as this is a legal matter for the Court and the proper subject of a jury instruction indicating that a pending proceeding includes all steps related to removal or reinstatement of removal by DHS and ICE, including the execution of an administrative arrest warrant. *See* 2 Modern Federal Jury Instructions-Criminal ¶ 46.04 – Comment to Instruction 46-23

("Although it is helpful to define a proceeding for the jury, the question of whether an agency action is a 'proceeding' is a question of law decided by the judge."); *see also United States v. Fruchtman,* 421 F.2d 1019, 1021 (6th Cir. 1970) (no error when the district court instructed the jury that the matter at issue was a proceeding within the meaning of § 1505, as the "definition of 'proceeding' as used in the statute was a question of law to be determined by the court rather than the jury"); *accord United States v. Pugh,* 404 Fed. Appx. 21, 27 (6th Cir. 2010) ("whether an agency action constitutes a 'proceeding' is a question for the judge, not the jury"); *United States v. Leo,* 941 F.2d 181, 198 (3rd Cir. 1991) (whether agency audit referenced in the indictment "constituted a proceeding as that term is employed in § 1505 presents a question of law"); *United States v. North*, 910 F.2d 843, 894 n. 29 (D.C. Cir. 1990) (per curiam) (finding it "indisputable that the question of whether a proceeding constitutes an inquiry under § 1505 is a matter of law for the court"), modified on other grounds, 920 F.2d 940 (D.C. Cir. 1990) (per curiam).

In any event, given the elements of the charged offenses, the United States will have witnesses from ICE prepared to testify as to the issuance of the arrest warrant for E.F.R. and where the attempted execution of that warrant fit in the overall immigration process for him. That is neither expert testimony nor a legal opinion but instead permissible factual testimony from individuals with knowledge. And to the extent it is viewed as providing any opinion, as noted above, it would be a permissible lay opinion under Rule 701. *See Estrada,* 969 F.3d at 1271-72 (testimony from Treasury and State Department employees explaining the process for license and visa applications and the

15

impact the defendant's conduct would have on their agencies was lay testimony not an expert opinion).

Of course, to the extent these issues are addressed in appropriate jury instructions, there would be no need to spend substantial time on them, streamlining the trial and reducing the demands on the Court's time.

9. **Motion to prohibit "expert testimony from lay witnesses" regarding circuit court procedures.**

The defendant's ninth motion seeks to "prohibit the Government from eliciting expert testimony from lay witnesses regarding Milwaukee County Circuit procedures." Dkt. 59 at 3. There is no further explanation, merely a citation to Federal Rule of Criminal Procedure 16(a) (which governs discovery) and Federal Rule of Evidence 701 (which allows lay opinions).

The United States is not sure of the intended scope of this motion or its reference to "court procedures." In addition, although the defendant recently produced the circuit court's procedural rules as reciprocal discovery, their relevance to the charged offenses is not apparent.

The motion cites Rule 701. Under that rule, lay opinions must be (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. The final requirement is designed "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded

16

through the simple expedient of proffering an expert in lay witness clothing." Advisory Committee Note to 2000 Amendments to Fed. R. Evid. 701.

A key distinction for the third element is whether the subject of the testimony is *specialized* because it is beyond the ability of an average juror to understand – as opposed to just based on *particularized* knowledge based on personal experience about a topic a juror could understand when the information is conveyed. For example, the Advisory Committee has explained that an individual can provide a lay opinion about the practices or the effect of a course of conduct on his employer's business "not because of experience, training, or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Id.; see also Chicago Joe's Tea Room LLC v. Village of Broadview*, 94 F.4th 588, 597 (7th Cir. 2024); *see also Hulsing Enterprises, LLC v. Fazio Mechanical Service, Inc.*, 2025 WL 2960178 at *4 (N.D. Ohio October 19, 2025) (collecting cases).

Any testimony from witnesses about "court procedures" in this case will not involve expert testimony on a subject that is outside of the ability of jurors to comprehend but rather factual observations and perceptions. For example, lawyers, court personnel, and law enforcement might describe the routine sight of individuals being arrested in the public hallways at the courthouse. Victim advocates might describe their role and their procedures for making sure victims, like E.F.R.'s victims, are allowed to exercise their rights. Other witnesses with firsthand experience will testify that the non-public hallways are locked from the main hallway, are not routinely used by anyone other than court staff, employees, or jurors, and that they had never seen a judge wave a defendant in a criminal

17

case into that area. Multiple witnesses are likely to testify that despite being in the courthouse on a regular basis, they don't recall ever seeing a judge wearing a robe in the hallway other than for ceremonial functions.

To the extent this type of testimony relates to something the defendant views as "court procedures," it clearly would not involve rendering an expert opinion on something requiring scientific, technical, or specialized knowledge. Rather, it would involve factual observations or, in some instances, permissible lay opinions to explain why they took notice of certain conduct and/or why they found it unusual.

These observations and perceptions are relevant to the defendant's intent in this case, as her filings and statements to the media repeatedly state that she did not nothing wrong and that the evidence will show that her conduct and the proceedings that day were routine and simply "business as usual." To the extent witnesses testify that the conduct was not usual, that would be based on their own perception, helpful to understanding their testimony or determining a fact in issue, and not based on scientific, technical, or other specialized expertise. As such, to the extent the testimony would be viewed as offering an opinion, it would be admissible under Rule 701.

### 10. Motion to allow jury to hear statements made by the Attorney General and the Director of the FBI

In her tenth motion *in limine*, the defendant asks that she be allowed to "elicit" (she doesn't say how) statements (she doesn't say which ones) made to the media and online by the Attorney General of the United States and the Director of the FBI concerning her case. She argues that these statements are "admissions of a party opponent" within the

18

meaning of Federal Rule of Evidence 801(d)(2) and are relevant because they show "bias in the investigation and prosecution."

It is true that bias is "broadly admissible on issues of credibility," but neither the Attorney General nor the FBI Director is going to testify. Further, as the government has argued elsewhere, evidence of what the defendant calls "bias in the investigation and prosecution" is extraneous, collateral, and irrelevant to the defendant's guilt or innocence. Dkt. 56 (Government Motion in Limine VI). The Court should reject defendant's transparent attempt to inject national political figures into a trial about what happened in and around her courtroom at the Milwaukee County Courthouse on April 18, 2025. Indeed, it should affirmatively disallow such evidence.

**11. Motion to compel production of audio recordings and transcripts.**

In her eleventh motion *in limine*, the defendant seeks an order compelling the government to produce enhanced versions of audio recordings and transcripts, and to provide advance notice of any excerpts it intends to play at trial to avoid unfair surprise and prejudice. The defendant asserts that disclosure is required if the enhanced recordings or transcripts include her statements under Fed. R. Crim. P. 16(a)(1)(B); that they should be made available for inspection because they are material to defense preparation and the government intends to use them in its case in chief under Fed. R. Crim. P. 16(E)(1)–(2); and that they should be available for examination and copying if the government intends to use excerpts as summaries under Fed. R. Evid. 1006(b).

The government produced the original audio recordings to the defendant months ago, and on October 20, 2025, provided working copies of the enhanced recordings to her

19

as well. As discussed in section 7 above, there will be no material difference between the substance of the original recordings and the final version of the enhanced recordings, which will merely isolate, increase, or decrease the volume of the various microphone inputs to focus on relevant discussions. The entire duration of the recordings, which include on and off the record discussions inside courtroom 615 on the morning of April 18, 2025, is less than 40 minutes long. Under these circumstances, it is difficult to imagine how the defendant could be surprised, unfairly prejudiced, or incapable of preparing her defense based upon what is already in her possession.

Nevertheless, the government anticipates producing final versions of the enhanced recordings and a transcript to the defense as soon as those items are finalized – and certainly in advance of the final pretrial conference. The government also will identify relevant excerpts of the recordings in its exhibit list and will also seek a stipulation as to the admissibility of the enhanced recordings and transcript to streamline trial proceedings. For these reasons, the defendant's eleventh motion in *limine* should be denied as moot.

### 12. Motion regarding the rule of completeness.

The defendant's twelfth motion *in limine* also relates to the audio recordings and seeks an order authorizing her to introduce any portions of the recordings which she demonstrates in fairness should be contemporaneously considered pursuant to Fed. R. Evid. 106. To determine whether evidence qualifies or explains evidence offered by the opponent, courts use a four-part test: "(1) does it explain the admitted evidence, (2) does it place the admitted evidence in context, (3) will admitting it avoid misleading the trier

of fact, and (4) will admitting it insure a fair and impartial understanding of all the evidence." *United States v. Velasco,* 953 F.2d 1467, 1475 (7th Cir.1992) (citations omitted). "The completeness doctrine does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011).

The government does not object to the introduction of any portion of the recordings inside Courtroom 615 on the morning of April 18, 2025, that satisfy the requirements of Rule 106.

### 13. The United States already had agreed to provide applicable grand jury materials two weeks before trial.

The defendant's final motion seeks an order that the government produce grand jury materials at least two weeks before trial. Before the defendant filed her motion, the United States already had agreed to provide applicable grand jury materials to her counsel by that date. The United States also already provided written statements that various witnesses had presented to the grand jury as part of their testimony. The United States therefore has no objection to the entry of an order requiring it to provide grand jury materials for the witnesses it intends to call in its case-in-chief at least two weeks before trial.

Respectfully submitted on November 14, 2025.

/s/ Richard G. Frohling
Acting United States Attorney
State Bar No.: 1021952
Email: richard.frohling@usdoj.gov

/s/ Keith Alexander

Criminal Division Chief
State Bar No.: 1053000
Email: keith.alexander@usdoj.gov

/s/ Kelly B. Watzka
Deputy Criminal Division Chief
State Bar No.: 1023186
Email: kelly.watzka@usdoj.gov

/s/ Timothy W. Funnell
Green Bay Branch Chief
State Bar No.: 1022716
Email: tim.funnell@usdoj.gov

/s/ Jonathan H. Koenig
Appellate Chief
State Bar No.: 1045517
Email: jonathan.h.koenig@usdoj.gov

Attorneys for Plaintiff
Office of the United States Attorney
517 East Wisconsin Avenue, Rm. 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738