UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

    v.                            Case No. 25-CR-89 (LA)

HANNAH C. DUGAN,

                Defendant.

## RESPONSE TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS

The United States of America, by its counsel, hereby objects to the defendant's proposed jury instructions, which misstate the law and would create error.

### I.    Objections to the Defendant's Proposed Instructions One through Six related to Section 1071 (Count One)

The defendant's proposed instructions for Count One, which charges the defendant with concealing an individual from a federal arrest in violation of 18 U.S.C. § 1071, are inconsistent with the statute and applicable caselaw in several respects, including by proposing to: (a) improperly add the word "actually" to the element involving concealment; (b) misstate the definition of "concealed" by relying upon caselaw interpreting different terms from a different statute; (c) instruct that the government must prove her acts of concealment be "material;" (d) include an instruction that cannot be based upon a theory supported by the evidence; and (e) instruct the jury

that the defendant can obstruct a lawful arrest if she had a "legal right" to do so, or if it was an "official act" that was "part of her job."

First, the defendant claims that the jury must find that she "actually" concealed E.F.R. from arrest, citing a single phrase in a case from the Fourth Circuit. Dkt. 57 at 3-4, citing *United States v. Mitchell*, 177 F.3d 236, 238 (4th Cir. 1999). The term "actually" is not in the statute. It is not what the Seventh Circuit requires. *United States v. Lockhart*, 956 F.2d 1418, 1423 (7th Cir. 1992) (stating that the government must prove that the defendant "harbored or concealed [the fugitive]."). It is not even part of the pattern instructions used by the Fourth Circuit. *See* Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases*, District of South Carolina § 1071 (2024 Online Ed.): https://www.scd.uscourts.gov/pji.

The problem with adding the term "actually" is that it suggests that the defendant must have actually *succeeded* in concealing E.F.R. from discovery or arrest. The risk of making that improper suggestion is heightened when coupled with the defendant's proposed definition of "concealed." Per the defense, "[concealed] is *protecting a person* from some external menace, deliberately *safeguarding* someone from federal authorities, or *preventing detection* by law enforcement officers." Dkt. 57 at 5 (emphasis added). No court has defined the term "concealed" in section 1071 to require so much. Rather, "'*any physical act* of providing assistance . . . to aid the prisoner in avoiding detection and apprehension will make out a violation of section 1071.'" *Lockhart*, 956 F.2d at 1423 (emphasis added) (quoting *United States v. Stacey*, 896 F.2d 75, 77 (5th Cir. 1990)).

2

The defendant need not succeed in concealing the wanted individual from detection and arrest, which is illustrated, ironically, by the very case the defendant cited – *United States v. Mitchell*. In *Mitchell*, at least five law enforcement officers charged the defendant's front door when they had reason to believe the person wanted for an arrest was in the defendant's apartment. *Mitchell*, 177 F.3d at 237. The defendant attempted to push the door closed, but the officers overpowered him "in two or three seconds." *Id.* The jury convicted him of concealing a person from arrest, but the district court granted a motion for acquittal. *Id.* at 237-38. The Fourth Circuit reversed, holding that the act of closing the door on law enforcement officers who are attempting to apprehend a suspect is an "affirmative physical act of providing assistance adequate to satisfy the requirement of § 1071." *Id.* at 239 (internal quotation marks omitted) (citing *Stacey*, 896 F.2d at 77 (closing and locking the front door after seeing the police approaching was a sufficient physical act to sustain conviction under section 1071)).

It did not matter that Mitchell's act failed to prevent the individual's detection and arrest. His physical act that lasted just two to three seconds was sufficient to "conceal" the wanted individual for purposes of section 1071. *See also United States v. Hash*, 688 F.2d 49, 52 (8th Cir. 1982) (per curium) (section 1071 does not require that the concealment last for any minimum amount of time); *United States v. Biami*, 243 F. Supp. 917, 918 (E.D. Wis. 1965) (noting that because "the statute is directed at the conduct of the defendant," section 1071 can be violated even if law enforcement at all times knew the location of the wanted individual). Instructing the jury that more is required would misstate the law.

3

The defense nevertheless cites three Seventh Circuit cases to support her proposed definition of "concealed." Yet, all three of those cases interpret different terms in a different statute. *See* Dkt. 57 at 5, citing *United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012); *Untied State v. Ye*, 588 F.3d 411 (7th Cir. 2009); *United States v. Campbell*, 770 F.3d 556 (7th Cir. 2014). In *Costello*, the court defined "harboring" in 8 U.S.C. § 1324(a)(1)(A)(iii); in *Ye*, the court affirmed the district court's definition of "shielding" in section 1324(a)(1)(A)(iii); and in *Campbell*, the court found that it did not even need to resolve the dispute of whether the district court defined "harboring" in section 1324(a)(1)(A)(iii) properly. *Costello,* 666 F.3d at 1043, 1050; *Ye*, 588 F.3d at 414-15; *Campbell*, 770 F.3d at 568-70.

None of those cases interpreted "concealed" as used in 18 U.S.C. § 1071. In fact, there is no case defining "concealed" in section 1071 as "protecting a person from some external menace, deliberately safeguarding someone from federal authorities, or preventing detection by law enforcement officers." The defense presumably extracted that definition from the inapposite cases it cites. Wherever the defendant found it, the Court ought to reject it. It misstates how courts have universally defined "concealed" as used in section 1071.

Relying upon cases defining different terms in different statutes may be why the defendant also misstates the law in another portion of its proposed definition of "concealed." The defendant proposes, as part of its definition of "concealed," the following: "Sheltering a person or making a false statement, without more, is not concealing." Dkt. 57 at 5. The defendant is correct that "making a false statement, without

4

more, is not concealing." *Lockhart*, 9546 F.2d at 1423 ("[w]ithout further acts of concealment, a mere false statement does not violate the statute."). However, there is no case that holds that "[s]heltering a person . . . without more, is not concealing." Courts have held the very opposite. "[A]ny physical act of providing assistance" is sufficient. *See, e.g., Stacey*, 896 F.2d at 77 (locking a single door); *Mitchell*, 177 F.3d at 238. The defendant's proposed definition, again, misstates the law.

The defendant also proposes that section 1071 requires that the concealment must "materially affect" E.F.R.'s arrest or discovery, which, per the defendant, must be acts that have "a natural tendency to affect, or is capable of affecting, [E.F.R.'s] arrest or discovery." Dkt. 57 at 1-2, 7. Again, her proposal misstates the law. The text of the statute does not require the concealment to be material. Congress has included the term "material" in other contexts; it did not in section 1071. *See, e.g.*, 18 U.S.C. § 1001 (criminalizing "any trick, scheme, or device" that "conceals . . . a material fact"). Not surprisingly, no court has ever added a materiality element to section 1071 either. *See, e.g., Lockhart*, 956 F.2d at 1423 ("[t]o prove . . . concealing or harboring . . . in violation of §1071, the government had to establish three facts:  that Lockhart knew that a federal warrant had been issued for Matthews's arrest; that Lockhart harbored or concealed Mathews; and that Lockhart intended to prevent Matthews's discovery and arrest."). The statute is directed at the defendant's conduct, not whether that conduct could have affected law enforcement's actual discovery and arrest of the individual. *See Biami*, 243 F. Supp. at 918. The Court should thus reject the defendant's proposal to add a materiality

element. Adding that element would be inconsistent with the statute and applicable case law.

The defendant also proposed an instruction for section 1071 that reflects a theory of the case that cannot possibly be supported by the anticipated evidence at trial. Her proposed jury instruction number six correctly states the law: "Mere failure to disclose the location of a fugitive is not sufficient to establish a violation of the statute charged in Count 1." Dkt. 57 at 10. However, "[a] defense jury instruction must be given only if the instruction reflects a theory that is supported by the evidence." *United States v. Andreas*, 216 F.3d 645, 669 (7th Cir. 2000) (internal quotation marks omitted), citing *United States v. Fawley*, 137 F.3d 458, 468 (7th Cir. 1998).

The theory of the government's case is not remotely close to suggesting the defendant is liable for failing to disclose the location of E.F.R.; on that point, the defense cannot possibly claim otherwise. The evidence at trial will establish that federal law enforcement agents never asked or expected the defendant to disclose E.F.R.'s location. E.F.R. was in the defendant's courtroom when the defendant acted. The federal agents were simply waiting for the hearing to conclude before arresting him in the public hallway. The defendant then took several acts with the intent to conceal E.F.R. from arrest, none of which was a mere failure to disclose E.F.R.'s location. Her proposed instruction suggesting otherwise would be improper.

Finally, the government's objections to the defendant's fourth and fifth proposed instructions are addressed separately in its response to the defendant's first motion *in limine*, which is premised on the defendant's judicial immunity related claims. However,

6

if her claim of "a legal right to act as she did" is related to a theory beyond her claimed immunity as a judge, such as her possible mistrust of federal law enforcement, that is no defense either. "[T]he law does not permit the private luxury of determining if and when federal custody of a fugitive shall commence." *United States v. Bissonette*, 586 F.2d 73, 77 (8th Cir. 1978); *see also United States v. Forrest*, 356 F. Supp. 343, 344 (W.D. Mich. 1973) (even if defendants knew that the charges against the fugitive were false and a product of government harassment, that would not justify concealing him). Instructing the jury otherwise would be improper.

## II.    Objections to the Defendant's Proposed Instructions Seven through Twenty-One related to Section 1505 (Count Two)

Count Two charges the defendant with endeavoring to obstruct federal proceedings, in violation of 18 U.S.C. § 1505. Her proposed instructions for this count are inconsistent with the statute and applicable caselaw. For example, they: (a) improperly add a "materiality" element; (b) ignore the statutory definition of "corruptly"; (c) misstate the definition of "proceeding"; (d) provide a definition of "endeavor" that includes baseless additions; (e) recast the defendant's rejected immunity arguments as instructions telling the jury not to consider relevant evidence; and (f) include a "unanimity" instruction that runs counter to law. As such, they should be rejected.

### A.    There is no "materiality" element in Section 1505.

In defendant's seventh proposed instruction, she includes "materiality" as an element of section 1505. She then seeks to define that term in her tenth proposed instruction no. 10. However, that term is not in the statute, and the defendant herself

7

concedes that "neither the Seventh Circuit nor the Supreme Court has construed 18 U.S.C. § 1505 to require materiality as an essential element." Dkt. 57 at 12.

In addition, although the defense references the Seventh Circuit Pattern Instructions for sections 1503 and 1512 as authority for her proposed elements, neither of those instructions includes "materiality." That is not a surprise, as the Seventh Circuit has expressly rejected that materiality is an element of section 1512(c). *See United States v. Burge*, 711 F.3d 803, 812 n.4 (7th Cir. 2013). As the Seventh Circuit explained, materiality is not an element of these offenses "because the relevant intention is directed at making the government's job harder . . . not at actually succeeding in that effort." *United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011) (rejecting materiality as an element of 1512(c)).

Because the statute does not include it, and the Seventh Circuit does not require it, using the language in the defendant's proposed instructions would create error. As such, the Court should use the elements set forth in the Government' proposed instructions, which are consistent with Seventh Circuit law and track pattern instructions from the Fourth Circuit, other model instructions, and instructions approved in the Western District of Wisconsin. *See* Eric Wm. Ruschky, Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina § 1505 (2024 Online Ed.): https://www.scd.uscourts.gov/pji; 2 Modern Federal Jury Instructions-Criminal ¶ 46.04 (2023) (Instructions 46-22 et seq.); *United States v. Clark,* Case No. 22-CR-55 (W.D. Wis.) (Peterson, J.) at Document 504.

### B. The defendant's proposed instructions ignore that Congress defined "corruptly" for Section 1505.

Section 1505 includes the term "corruptly." Defendant's seventh and eleventh proposed instructions use phrases like "deception" and "conscious wrongdoing" and include a requirement that the defendant was acting for the purpose of "procuring an unlawful benefit either for herself or for some other person." *See* Dkt. 57 at 11, 19. As authority for her definition, the defendant cites caselaw addressing sections 1503 and 1512. *See id.*

The Court should reject both instructions. Unlike for sections 1503 and 1512, Congress has provided a specific definition of "corruptly" for purposes of section 1505. Section 1515(b) expressly provides:

> As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing or another, including making a false statement, or withholding, concealing, altering, or destroying a document or other information.

The defendant's proposed instructions do not track that language. Nor do they even acknowledge section 1515(b)'s existence.

Rather, the defendant seeks to add requirements such as "consciousness of wrongdoing." However, the defendant does so based on cases involving section 1512(b) – which has different statutory language and is not subject to the definition set forth in section 1515(b). Section 1512(b)(3) requires proof that the defendant "*knowingly* corruptly persuaded" a witness to take obstructive action. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 704-5 (2005) (holding that "knowingly corruptly persuaded" requires consciousness of wrongdoing that would not be required if the statute simply read "corruptly persuaded"). Unlike section 1512(b), section 1505 does not include the word

9

"knowingly" before corruptly. As such, the defendant's own citation undercuts her proposed language.

The defendant's reliance on *United States v. Edwards*, 869 F.3d 490, 499 (7th Cir. 2017), is equally misplaced. Not only was that another section 1512(b)(3) case, which would require proof of consciousness of wrongdoing, but it involved a situation in which the district court judge refused to even include "corruptly" in the instructions at all. *See id.* It does nothing to support the defendant's proposed instructions here.

Nor does the defendant's language about acting for personal gain or the benefit of another come from the applicable statutory definition or even a case relating to section 1505. Rather, it comes from a statement in a concurring opinion in a prosecution of an individual under § 1512(c) for conduct at the Capitol on January 6, 2021, indicating that "[w]hen used as a criminal mental state, 'corruptly' is a term of art that requires a defendant to act with an 'intent to procure an unlawful benefit either for himself or some other person.'" *See United States v. Fischer*, 64 F.4th 329, 362 (D.C. Cir. 2023) (Walker, J. concurring in part). That generic statement in a case involving a different statute, even if it had been a holding, does not outweigh a specific statutory definition of "corruptly" Congress enacted for section 1505.

Finally, the defendant's instruction also includes that the defendant must have acted "dishonestly, immorally, or in a depraved way" and that she could not have acted

10

"'wrongfully' if she had a legal right to do what she did." *See* Dkt. 57 at 19.[1] None of these phrases is in the statutory definition, and all of the cases cited by the defendant in support of this language involved section 1512(b)(3). As explained above, that statute – unlike § 1505 – requires proof of consciousness of guilt. In addition, the language about having a "legal right" to obstruct was a reference to a specific legal right – namely the right not to incriminate oneself, which can obstruct an investigation but is not wrongful. *See United States v. Matthews,* 505 F.3d 698, 706 (7th Cir. 2007) ("As explained in *Arthur Andersen*, under limited circumstances, a defendant is privileged to obstruct the prosecution of a crime. That privilege flows from the defendant's enjoyment of a legal right—such as the right to avoid self-incrimination."). Based on her motions *in limine*, and other proposed instructions, it seems as if the defendant is including the language to suggest to the jury that she had a "legal right" to obstruct because she was a judge. That, of course, has been flatly rejected in the context of her immunity motion. As such, her instructions which discuss that she could not have acted wrongfully or corruptly because she had a "legal right" based on her job as a judge (instructions 7, 11, 12, and 13) all should be rejected.

### C. The defendant's instructions misstate the definition of "proceeding."

The defendant's eighth proposed instruction on the "proceeding" element is similarly flawed and should not be given. As an initial matter, the term "proceeding" in

---

[1] She proposes two more instructions to this effect as Instruction Nos. 12 and 13, claiming that she could not have acted corruptly if she had a legal right to act as she did, including because she was a judge.

11

section 1505 is broader than the "official proceeding" language of sections 1503 and 1512, which have their own specific definition. *See* 18 U.S.C. § 1515(a)(1).

For purposes of section 1505, the term proceeding is "defined rather broadly." *United States v. Senffner*, 280 F.3d 755, 761 (7th Cir. 2002). As the Sixth Circuit has explained, "proceeding" is a "very broad" and "comprehensive term meaning the action of proceeding—a particular step or series of steps, adopted for accomplishing something" and simply refers to "proceeding in the manner and form prescribed for conducting business before the department or agency, including all steps and stages in such an action from its inception to its conclusion." *Rice v. United States*, 356 F.2d 709, 712 (6th Cir. 1966); *see also United States v. Mitchell*, 877 F.2d 294, 299 (4th Cir. 1989); 2 Modern Federal Jury Instructions-Criminal ¶ 46.04 (collecting caselaw supporting Instructions 46-22 through 46-27).

Despite the broad nature of "proceeding," the defendant proposes instructing the jury that an "effort to arrest a person, or to execute an arrest warrant of any kind, is not a proceeding" and that the term "means an actual administrative or judicial process apart from an attempt to arrest someone." *See* Dkt. 57 at 14. However, the defendant's language is not contained in or supported by the cases she cites, namely *United States v. Kirst*, 54 F.4th 610 (9th Cir. 2022), *United States v. Kelley,* 36 F.3d 1118 (D.C. Cir.1994), and *Senffner*, 280 F.3d 755.

*Kirst* involved an NTSB investigation into a plane crash. The defendant, who had lied to the NTSB, argued that the investigation could not be a proceeding because the agency lacked regulatory or adjudicatory authority. *See* 54 F.3d at 619. The Ninth Circuit

disagreed, finding that an investigation by an agency with the power to issue subpoenas was a proceeding. *Id.* at 621. The decision did not have anything to do with whether an administrative arrest warrant could be a step in an agency proceeding.

*Kirst* relied primarily on *Kelley*. In *Kelley*, the defendant argued that the investigative activities of USAID-OIG fell outside of section 1505 because "proceeding" only applies to "adjudicatory or rule-making activities." *See* 36 F.3d at 1127. The D.C. Circuit disagreed, finding that although a "mere police investigation" would not be a proceeding, even investigative activities can qualify as proceedings in part because the agencies might have some adjudicative power or the ability to enhance their activities through subpoenas or even administrative warrants. *See id.* Rather than supporting the defendant's position, this confirms that issuing or executing an administrative warrant can be a step in a proceeding. That is precisely what is alleged here – a federal agency issued a warrant as part of removal proceedings for an individual who was not lawfully in the United States.

Finally, the defendant cites *Senffner*. In *Senffner*, the defendant argued that the SEC's effort to trace funds was not a proceeding because the SEC had no independent authority to freeze or distribute assets or impose civil penalties but instead would have to obtain an order from a court. 280 F.3d at 760. Citing *Kelley*, the Seventh Circuit simply found that an SEC investigation was a proceeding rather than a "mere police investigation" given its ability to issue subpoenas, even if aspects of the investigation did not proceed under that authority. *Id.* at 762.

13

*Senffner* also cited *United States v. Schwarz*, 924 F.2d 410 (2nd Cir. 1991). In that case, customs officials at an airport detained a shipment of arms destined for Poland. When looking into the shipment, officials interviewed the defendants, who gave false information. The defendants argued that the interview was not a "proceeding." The Second Circuit disagreed, finding that term is to be applied broadly and that the "interview of [the defendants] falls within the meaning of a 'proceeding' under § 1505." *Id.* at 423.

The defendant also argues that the jury should be instructed that a proceeding before an agency must include a "second, outside party integrally involved in the 'proceeding' for it to be 'before' the agency." *See* Dkt. 57 at 14. The support cited for this proposal is *United States v. McHugh*, 583 F.Supp. 3d 1 (D.C. Cir. 2022). However, *McHugh* had nothing to do with section 1505. That case addressed the definition of "official proceeding" applicable to section 1512(c) cases and assessed whether individuals who entered the Capitol on January 6, 2021, obstructed an official proceeding before Congress. The court simply found that the Electoral College counted as a second party involved in an official proceeding before Congress. That has no relevance here, where there is indisputably a second party to the removal proceedings referenced in the indictment, namely E.F.R.[2]

---

[2] The defendant's proposed instruction also includes bracketed language to be used "[i]f there is more than one 'proceeding' identified by the Government." *See* Dkt. 57 at 14. That is not the case here. The indictment focused on the "removal proceedings" for E.F.R., one step of which was the issuance and planned execution of the administrative arrest warrant. In fact, the warrant itself specifies: "**YOU ARE COMMANDED** to arrest

14

As a final matter, the language of the defendant's proposed instruction (telling the jury that certain events are not proceedings) demonstrates that she agrees that whether an agency action is a "proceeding" is a question of law to be decided by a judge. As such, she cannot dispute that it would be proper for the Court to instruct the jury that removal proceedings for E.F.R. qualifies as a proceeding. This would be consistent with model instructions and relevant caselaw. *See* 2 Modern Federal Jury Instructions-Criminal ¶ 46.04 – Comment to Instruction 46-23; *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir. 1970) (no error when the district court instructed the jury that an FTC investigation was a proceeding within the meaning of section 1505, as the "definition of 'proceeding' as used in the statute was a question of law to be determined by the court rather than the jury"); *accord United States v. Pugh*, 404 Fed. Appx. 21, 27 (6th Cir. 2010) ("whether an agency action constitutes a 'proceeding' is a question for the judge, not the jury"); *United States v. Leo*, 941 F.2d 181, 198 (3rd Cir. 1991) (whether agency audit referenced in the indictment "constituted a proceeding as that term is employed in § 1505 presents a question of law"); *United States v. North*, 910 F.2d 843, 894 n. 29 (D.C. Cir. 1990) (per curiam) (finding it "indisputable that the question of whether a proceeding constitutes an inquiry under § 1505 is a matter of law for the court"), modified on other grounds, 920 F.2d 940 (D.C. Cir. 1990) (per curiam).

Given the above, the Court should reject the defendant's proposed instructions on proceedings and give the instructions proposed by the United States.

---

and take into custody for *removal proceedings* under the Immigration and Nationality Act, the above-named alien." (italics added)

**D.     The defendant's instructions misconstrue "endeavor."**

In her Proposed Instruction No, 9, the defendant also improperly changes the meaning of the word "endeavor." The defendant proposes that the jury be told that "endeavor" is "more than just an attempt to obstruct" and that "the government must prove Ms. Dugan took a *substantial step* toward influencing, obstructing, or impeding a federal proceeding…" *See* Dkt. 57 at 16 (emphasis added).

The language of the proposed instruction is not found in any of the cases cited by the defendant. In fact, the cases she cites undercut her claim, confirming that "any endeavor" is sufficient, regardless of how substantial and regardless of success. For example, the defendant cites *Mitchell*, 877 F.2d 294, which simply makes clear the term should be "broadly construed" and that "any endeavor" or "any effort or any act, however contrived" violates the statute if done with the requisite intent. *Id.* at 298-99. Similarly, the defendant cites *United States v. Cueto*, 151 F.3d 620, 631, (7th Cir. 1998), but that too just emphasizes that the term must be construed broadly, and that the success of endeavor is irrelevant.

The language proposed by the defendant also is inconsistent with the Seventh Circuit Pattern Instruction for "endeavor" in the context of section 1503. That instruction reads as follows:

### 18 U.S.C. § 1503 DEFINITION OF "ENDEAVOR"

A defendant endeavors to influence, obstruct or impede [the due administration of a proceeding] [a [juror; witness; court officer]] if the defendant acts purposefully, with the knowledge or notice that his actions would have the natural and probable effect of wrongfully [obstructing, impeding or interfering with the due administration of the proceeding][obstructing, influencing, intimidating or impeding the [juror; witness; court officer] in the discharge of their duties]. The endeavor need not be successful.

Based on the above, the Court should reject the defendant's proposed instructions, which are not based on the law and would only create confusion and error.

### E. Defendant's proposed instructions 12 through 20 are based on her rejected immunity arguments.

The defendant also submitted nine separate instructions (nos. 12 through 20) that instruct the jury based on variations of her claim that because she was a judge, she had a legal right to obstruct federal proceedings in the manner she did. That is, all these instructions are based on the same flawed immunity claims rejected by the Court in the context of her motion to dismiss. She has raised them again in her first "motion in *limine*" seeking to bar all evidence of any act she took while a judge (Dkt. 58), and they have resurfaced again here. They fare no better in this context and should be rejected in their entirety, for the reasons set forth in the government's response to her first "motion in limine."

### F. There is no basis for a "unanimity" instruction as to particular aspects of her obstructive conduct.

Count Two alleges, in part, that the defendant endeavored to influence, obstruct, and impede removal proceedings by committing affirmative acts to assist E.F.R. in

17

evading arrest, including [five delineated acts]." Dkt. 6 at 2. The defendant proposes that in order to convict her of Count Two, the jury must unanimously agree on which of the specified acts establish the third element of the offense, namely that she endeavored to influence, obstruct, or impede a proceeding. Dkt. 57 at 30. She is mistaken.

Federal Rule of Criminal Procedure 7(c)(1) provides, in relevant part, that an indictment may allege "that the defendant committed [the offense] by one or more specified means." Commenting on that rule, the Supreme Court has noted, "We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission. . . In these cases, as in litigation generally, 'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'" *Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (plurality) (internal citation omitted). Instead, "[t]he law distinguishes between the elements of a crime, as to which a jury must be unanimous, and the means by which the crime is committed." *United States v. Griggs*, 569 F.3d 341, 343-44 (7th Cir. 2009) (noting juror disagreement on what step defendant took to accomplish the goal of the conspiracy was "inconsequential."). As the Seventh Circuit recently explained, "[d]etails as to *how* an element might be accomplished, especially if unspecified by the statute's text, are brute facts, or the means to satisfying the element." *United States v. Chaoqun*, 107 F.4th 715, 725 (7th Cir. 2024) (finding espionage statute did not require jury unanimity as to action taken on behalf of foreign government).

18

To support her position, the defendant relies on *Fawley*, 137 F.3d 458, a perjury case in which the Seventh Circuit concluded that the jury should have been instructed that it must unanimously agree as to which statement contained in the indictment was false. *Fawley* involved an alleged violation of 18 U.S.C. § 1623 which requires, among other elements, proof "that the defendant, while under oath, testified falsely . . . *as charged in the indictment*." Seventh Circuit Pattern Jury Instructions (2023) at 757. The crux of a perjury offense is the making of a particular false statement. If an indictment alleges multiple false statements, unanimity is required to ensure that the jury agrees on the actual *crime* that the defendant committed. Unlike the perjury statute, section 1505 criminalizes a corrupt endeavor to influence, obstruct, or impede, not the particular means by which that is accomplished. Nothing in the text of section 1505 suggests that the acts taken to "endeavor to influence, obstruct, or impede" are themselves elements. Indeed, even the defendant agrees that such acts are not elements of the offense. Dkt. 57 at 11. Yet, defendant's proposed instruction 21 would inappropriately require unanimity on the underlying "brute" facts demonstrating the crime, in addition to the elements of the crime.

The defendant's reliance on *United States v. Richardson*, 526 U.S. 813 (1999), is similarly misplaced. *Richardson* involved the continuing criminal enterprise ("CCE") statute, 21 U.S.C. § 848, which requires that the government prove that the defendant committed a "continuing series of violations" and delineates dozens of sections of the criminal code as potential continuing offenses. Because the court interpreted the term "series of violations" as creating several elements of the offense, it held that the jury must

agree unanimously about which crimes the defendant committed. *Id.* at 818-20. The breadth and complexity of the CCE statute played a central role in the court's analysis.

The Seventh Circuit has repeatedly declined to extend *Richardson's* holding outside the CCE context or otherwise require jury unanimity regarding the means by which an offense is committed. *See United States v. Davis,* 471 F.3d 783, 791 (7th Cir. 2006) (finding jury did not need to be instructed that it had to agree on a specific execution of a scheme to defraud and that general unanimity instructions were sufficient); *United States v. Gibson,* 530 F.3d 606, 611-12 (7th Cir. 2008) (in murder for hire prosecution, jury not required to unanimously agree as to which promises defendant made to proposed hitman in order to convict); *United States v. Polluck,* 757 F.3d 582, 587-88 (7th Cir. 2013) (jury was not required to unanimously agree as to the specific firearm defendant possessed, which was a means of committing the offense); *United States v. Turner*, 836 F.3d 849, 862-63 (7th Cir. 2016) (unanimity not required as to the specific sanctioned entity to which the defendant conspired to provide services, which were a means, and not an element, of his offense); *United States v. Bonin*, 932 F.3d 523 (7th Cir. 2019) (in prosecution for impersonating a federal officer, jury not required to agree on the means by which defendant "acted" as such).

Citing dicta in *United States v. Matthews*, 505 F.3d 698, 709–10 (7th Cir. 2007), and a comment in Seventh Circuit Pattern Jury Instruction 5.08 (Conspiracy – Overt Act Required), the defendant also suggests without analysis that proposed instruction 21 could potentially avoid an unanimity issue. In *Matthews*, the indictment alleged 18 overt acts in furtherance of a conspiracy, at least one of which overlapped with a substantive

20

perjury count. *Id.* The court rejected the defendant's argument that the failure to give an unanimity instruction on the overt acts imperiled his right to a unanimous verdict, noting, "[o]n the facts of this case . . . we find no such risk. We can be sure that the jury was unanimous as to at least one overt act [a reference to the jury's conviction on the perjury count] . . . and no more is required." *Id.* at 709. For reasons that are not clear, the court added, "We should note however that if either party had requested a unanimity instruction or a special verdict form on the overt acts, unanimity would not have been an issue in this case. Counsel should seriously consider making such requests in the future." *Id.* at 710.

The comment to Pattern Jury Instruction 5.08 notes, "there is no requirement that the jury agree unanimously on which particular overt act was committed in furtherance of the conspiracy." (citing *Griggs*, 569 F.3d at 344). The comment also notes, "[t]here *may*, however, be some conflicting authority on this point." (citing *Matthews*, 505 F.3d at 710) (emphasis added). Although the suggestion of potential conflicting authority based on the dicta in *Matthews* is questionable, this Court need not concern itself with this issue – as this is not a conspiracy case requiring an overt act. As noted above, the Seventh Circuit has consistently held in a wide variety of cases that the law does not require unanimity with respect to the means by which an offense is committed.

At bottom, if twelve jurors unanimously agree that the defendant committed an act that was meant to influence, obstruct, or impede – but disagreed about which particular act – they would still be unanimous on the third element necessary to convict her of Count Two. Instructing the jury that more is required, as the defendant proposes,

21

not only misstates the law but could unnecessarily result in confusion and complicate the jury's deliberations. For these reasons, the Court should adopt the jury instructions proposed by the United States for Count Two.

## CONCLUSION

For the reasons set forth above, the Court should reject each of the defendant's proposed jury instructions and give the instructions proposed by the United States.

Respectfully submitted on November 14, 2025.

/s/ Richard G. Frohling
Acting United States Attorney
State Bar No.: 1021952
Email: richard.frohling@usdoj.gov

/s/ Keith Alexander
Criminal Division Chief
State Bar No.: 1053000
Email: keith.alexander@usdoj.gov

/s/ Kelly B. Watzka
Deputy Criminal Division Chief
State Bar No.: 1023186
Email: kelly.watzka@usdoj.gov

/s/ Timothy W. Funnell
Green Bay Branch Chief
State Bar No.: 1022716
Email: tim.funnell@usdoj.gov

/s/ Jonathan H. Koenig
Appellate Chief
State Bar No.: 1045517
Email: jonathan.h.koenig@usdoj.gov

Attorneys for Plaintiff
Office of the United States Attorney
517 East Wisconsin Avenue, Rm. 530
Milwaukee, Wisconsin 53202

22

Telephone: (414) 297-1700
Fax: (414) 297-1738

23