2024 WL 23147
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia, Richmond Division.

UNITED STATES of America
v.
Dennis Zeledon HERNANDEZ, Defendant.

Criminal Action No. 3:23cr122 (RCY)
|
Signed January 2, 2024

**Attorneys and Law Firms**

Robert Sunderland Day, Michael C. Moore, United States Attorney's Office Eastern District of Virginia, Richmond, VA, for Plaintiff.

Joseph Stephen Camden, Office of the Federal Public Defender, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

Roderick C. Young, United States District Judge

*1 This matter is before the Court on Defendant Dennis Zeledon Hernandez's ("the Defendant" or "Mr. Zeledon") Motion to Dismiss Count One of the Indictment. ECF No. 24. For the reasons stated below, the Court will deny the Defendant's motion.

## I. BACKGROUND

On or about December 19, 2019, an immigration judge of the Executive Office for Immigration Review ("EOIR"), entered an order of removal for Mr. Zeledon to be deported to El Salvador. *See, e.g.*, Gov't's Resp. Ex. 6 at 9,[1] ECF No. 27-6. EOIR is a sub-agency of the United States Department of Justice, an executive department of the United States.

On or about May 17, 2023, Mr. Zeledon was taken into the custody of Immigration Customs Enforcement ("ICE") pursuant to the December 9, 2019 final removal order. *See* Gov't's Resp. Ex. 2, ECF No. 27-2. ICE is a sub-agency of the United States Department of Homeland Security ("DHS"), an executive department of the United States.

The Government alleges that on July 2, 2023, Mr. Zeledon escaped from the Caroline Detention Facility in Bowling Green, Virginia, where he was held in Immigration and Customs Enforcement ("ICE") custody awaiting ICE's execution of the EOIR removal order and deportation to El Salvador. *See, e.g.*, Indictment 1–2, ECF No. 15; Mot. Dismiss 1, ECF No. 24. On or about July 7, 2023, law enforcement apprehended Mr. Zeledon in Durham County, North Carolina, nearly 200 miles away from the Caroline Detention Facility. *See* Indictment 2; Gov't's Resp. 1, ECF No. 26.

A federal grand jury indicted Mr. Zeledon, charging him with two counts: Count 1, felony obstruction of agency proceedings in violation of 18 U.S.C. § 1505; and Count 2, misdemeanor escape in violation of 18 U.S.C. § 751(a). On October 26, 2023, Mr. Zeledon filed the instant motion seeking dismissal of the obstruction charge in Count One arguing that the indictment fails to state that offense or, alternatively, infringes his double jeopardy rights because it charges him with the same offense twice. *See* Mot. Dismiss. The Court heard argument on the motion on December 4, 2023, and this opinion follows.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Specifically, Rule 12 permits a defendant to file a motion alleging a "defect in the indictment," including "failure to state an offense" and "charging the same offense in more than one count (multiplicity)." Fed. R. Crim. P. 12(b)(3)(B)(ii), (v).

**A. Failure to State an Offense**
On a motion to dismiss for failure to state an offense, the district court "is limited to considering the factual allegations in the indictment and must accept them as

true," "because a district court 'lack[s] authority to review the sufficiency of the evidence supporting the indictment.' " *United States v. Brewbaker*, 87 F.4th 563, 579 (4th Cir. 2023) (quoting *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003)); *see United States v. Treacy*, 677 F. App'x 869, 873 (4th Cir. 2017) (citing *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014)) (indictment allegations "presumed to be true" and motion should not be used "as a vehicle to test sufficiency of the evidence behind the allegations"). Thus, to challenge the sufficiency of an indictment, a defendant must "demonstrate that the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). A district court "may dismiss an indictment before trial based upon 'an infirmity of law,' but not based upon a determination of facts that will be developed at trial." *United States v. Lewis*, 262 F. Supp. 3d 365, 368 (E.D. Va. 2017) (quoting *Treacy*, 677 F. App'x at 873).

**B. Charging the Same Offense; *Blockburger***

*\*2* On a multiplicity challenge to an indictment, the Court must determine whether the two crimes constitute the "same offense." "To determine whether two crimes constitute the 'same offence' for double jeopardy purposes," courts "apply the test from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 [ ] (1932)." *United States v. Palacios*, 982 F.3d 920, 924 (4th Cir. 2020). Under *Blockburger*, "two crimes are the same unless each provision requires proof of a fact which the other does not." *Id.* (internal quotation marks omitted). Offenses that are wholly subsumed into another (i.e., a lesser-included offense) are "the 'same' for purposes of double jeopardy." *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *see Rutledge v. United States*, 517 U.S. 292, 297, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). The "particular facts offered to convict" the defendant are not the focus of the *Blockburger* inquiry; rather, "the exclusive focus of the *Blockburger* rule is upon the elements of the statutory provisions in question." *United States v. Allen*, 13 F.3d 105, 109 n.4 (4th Cir. 1993); *see United States v. Bird*, 409 F. App'x 681, 686 (4th Cir. 2011) ("In applying th[e *Blockburger*] test, we consider exclusively the legal elements of the different offenses, not the particular facts of the case at issue."). If *Blockburger* is satisfied—i.e., if both crimes require proof of a fact that the other does not—then the government may charge multiple crimes arising out of the same act or transaction. *See, e.g., Brown*, 432 U.S. at 166–69, 97 S.Ct. 2221.

**III. DISCUSSION**

The Defendant moves to dismiss the felony obstruction charge under 18 U.S.C. § 1505 because (1) the Indictment fails to state an offense under § 1505, and, in the alternative, (2) the felony § 1505 obstruction charge and the misdemeanor 18 U.S.C. § 751(a) escape charge are the "same offense" and thus prosecution for both violates his Double Jeopardy rights as defined in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See generally* Mot. Dismiss, ECF No. 24. On both scores, the Court disagrees.

**A. Failure to State an Offense**

The first issue is whether the Indictment states an offense under 18 U.S.C. § 1505. The Court finds that it does.

Title 18 U.S.C. § 1505 states in pertinent part:

> Whoever corruptly ... endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States ... [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both.

Thus, in a § 1505 prosecution, the Government must prove that on or about the date set forth in the Indictment, "a proceeding was pending before an agency of the United States." *United States v. Hernandez*, 199 F.3d 1328 (4th Cir. 1999) (unpublished table opinion); 2 Modern Federal Jury Instructions-Criminal ¶ 46.04 (2023). The Defendant argues that the Indictment legally fails to allege the existence of a pending § 1505 "proceeding." *See* Mot. Dismiss 1–2. The Indictment alleges, in relevant part, the following:

> On or about July 2, 2023, within the Eastern District of Virginia and elsewhere, the defendant, ZELEDON HERNANDEZ, did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of the law under which a pending proceeding was being had before a department and agency of the United States, that is, in connection with an Immigration Court proceeding before EOIR, and in connection with removal proceedings being conducted by DHS and ICE under the immigration laws and regulations of the United States, by knowingly and intentionally escaping from ICE custody at the Caroline Detention Facility in order to prevent, evade, or hamper DHS's and ICE's compliance with an order of removal issued by EOIR.

Indictment 2 ¶ 8, ECF No. 15.

**\*3** Though the Fourth Circuit has never provided a controlling definition of "proceeding" in the context of 18 U.S.C. § 1505, the Fourth Circuit has recognized "that several [other] courts have addressed the issue of what is an administrative proceeding under the statute" and that "[t]hese decisions have uniformly held that this term should be construed broadly to effectuate the statute's purposes." *United States v. Mitchell*, 877 F.2d 294, 300 (4th Cir. 1989) (citing Annotation, Construction and Application of 18 U.S.C. § 1505 Making it a Federal Offense to Obstruct Proceedings before Federal Departments or Agencies or Congressional Committees, 8 A.L.R. Fed. 893 (1971)). The model definition for "proceeding" in § 1505 (which the Fourth Circuit has acknowledged) comes from the Eighth Circuit's decision in *Rice v. United States*:

> 'Proceeding' is a comprehensive term meaning the action of proceeding—a particular step or series of steps, adopted for accomplishing something.... Proceedings before a governmental department or agency simply mean proceeding in the manner and form prescribed for conducting business before the department or agency, including all steps and stages in such an action from its inception to its conclusion.

356 F.2d 709, 712 (8th Cir. 1966), *quoted in Mitchell*, 877 F.2d at 300. This definition, the *Rice* Court explained, accords with the dictionary definition of the term. *Rice*, 356 F.2d at 712 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1807 (1986)); *accord Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019) (providing, as one definition, "[a]n act or step that is part of a larger action"). Though broad, federal courts have held that "the meaning of 'proceeding' in § 1505" is "limited to actions of an agency which relate to some matter within the scope of the rulemaking or adjudicative power vested in the agency by law." *United States v. Higgins*, 511 F. Supp. 453, 455 (W.D. Ky. 1981) (holding FBI criminal investigation to not be a § 1505 "proceeding" because FBI has no rulemaking or adjudicative powers), *cited in* Gov't's Resp. 5, ECF No. 27; *see also United States v. Wright*, 704 F. Supp. 613, 615 (D. Md. 1989) (holding criminal investigation by United States Attorney to not be a § 1505 "proceeding" under *Higgins* rationale because that office does not have rulemaking or adjudicative authority).

The Court begins with where the parties agree. The parties agree that EOIR Immigration Court "proceedings" (alleged in the Indictment, *see* Indictment 2 ¶ 8), are § 1505 "proceedings." *See, e.g.*, Mot. Dismiss 2–3; Gov't's Resp. 7.[2] Thus, there is no dispute that "all steps and stages in [an EOIR Immigration Court] action from its inception to its conclusion" will constitute § 1505 "proceedings." *Rice*, 356 F.2d at 712; *cf.* Mot. Dismiss 4 (arguing that the alleged obstructed "proceeding" in the Indictment comes "*after* the [EOIR] proceedings" (emphasis in original)). The issue is whether the Indictment alleges such a step or stage.

The Court now turns to where the parties disagree: whether the Indictment sufficiently alleges obstruction of a pending § 1505 EOIR Court "proceeding." The Indictment alleges that the Defendant obstructed a pending "Immigration Court proceeding before EOIR" by obstructing DHS's and ICE's execution of "an order of removal issued by EOIR." Indictment 2 ¶ 8. Thus, the

legal question before the Court is whether the execution of an EOIR-issued removal order can be understood as a "proceeding" of an EOIR Immigration Court action.[3]

**\*4** The thrust of the Defendant's argument is that DHS's and ICE's execution of a removal order issued by an EOIR immigration judge is not an EOIR Immigration Court "proceeding" because, in his view, the execution of an order of removal is a "step or stage" that comes *after* the "conclusion" of the EOIR removal "action." *See* Rice, 356 F.2d at 712; *cf.* Def.'s Reply 3, ECF No. 31 ("[The] execution of a removal order ... [i]s what comes *after* the proceeding." (emphasis in original)). In other words, the Defendant's position is that DHS's and ICE's execution of an EOIR-issued removal order comes after EOIR Court "proceedings" end, and so it is not among EOIR Court "proceedings." *See* Mot. Dismiss 4; Def.'s Reply 3. The Defendant draws an analogy to judicial proceedings (criminal proceedings, specifically) and argues that everything up to the issuance of the judgment is part of judicial "proceedings," but anything *after* the judgment is entered—such as the execution of the judgment—is not part of the "proceedings." *See* Mot. Dismiss 3; Def.'s Reply 3. The Government's position is that EOIR Immigration Court "proceedings" remained pending until the immigration judge's removal order was satisfied (or, alternatively, formally set aside). Gov't's Resp. 7–8. Stated differently, the Government's position is that the execution of the EOIR removal order is a continuing part of EOIR Immigration Court "proceedings." *See id.* at 6–7.

The Court disagrees with the Defendant and holds that DHS's and ICE's execution of an EOIR removal order is a "proceeding" covered by § 1505, because the execution of an EOIR order is a "proceeding" of an EOIR Immigration Court action. The Court agrees with the Defendant that an analogy between EOIR Immigration Court proceedings to other judicial proceedings is proper, but in following that analogy, the Court reaches the opposite outcome. The Court finds insightful the commentary accompanying Black's Law Dictionary's definition of "proceeding," which reads:

> 'Proceeding' is a word much used to express the business done in courts. A proceeding in court is *an act done by the authority or direction of the court, express or implied. It is more comprehensive than the word 'action,' but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action*, including the pleadings and judgment. ***As applied to actions, the term 'proceeding' may include*** — (1) the institution of the action; (2) the appearance of the defendant; (3) all ancillary or provisional steps, such as arrest, attachment of property, garnishment, injunction, writ of ne exeat; (4) the pleadings; (5) the taking of testimony before trial; (6) all motions made in the action; (7) the trial; (8) the judgment; (9) ***the execution***; (10) proceedings supplementary to execution, in code practice; (11) the taking of the appeal or writ of error; (12) the remittitur, or sending back of the record to the lower court from the appellate or reviewing court; (13) the enforcement of the judgment, or a new trial, as may be directed by the court of last resort.

*Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphases added) (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil*[4] *Procedure* 3–4 (2d ed. 1899)).

At oral argument, counsel for the Defendant characterized DHS's and ICE's execution of the EOIR Immigration Court removal order as "the execution of the judgment" of the EOIR Immigration Court. This Court agrees and finds that the answer to the instant legal question easily follows from there. If the "execution" of a judgment counts as a "proceeding" of a judicial "action," then the execution of the EOIR removal order counts as a "proceeding" of an EOIR Immigration Court removal "action." *See id.* (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3–4 (2d ed. 1899)). Indeed, there can be no dispute that DHS's and ICE's execution of the EOIR removal order—which ordered that the Defendant "shall be removed to El Salvador," *e.g.*, Gov't's Resp. 7—is "an act done *by the authority or direction of the [EOIR] court*," *Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added) (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3–4 (2d ed. 1899)); *see also Proceeding*, OXFORD ENGLISH DICTIONARY (last modified Sept. 2023), https://www.oed.com/dictionary/proceeding_n [https://perma.cc/92S7-2NQV] ("2.c. *Law*. A legal action

or process; *any act done by authority of a court of law*; a step taken by either party in a legal case." (emphasis added)). The execution of an EOIR removal order is thus a "step or stage in [an EOIR Immigration Court] action" and, consequently, a § 1505 "proceeding." *See* 🚩*Rice*, 356 F.2d at 712. And this understanding of "proceeding" fits well within § 1505's limits, as DHS's execution of the EOIR Immigration Court removal order (via ICE) comfortably qualifies as an "action[ ] of [DHS] which relate[s] to some matter within the scope of the rulemaking ... power vested in [DHS] by law." 🚩*Higgins*, 511 F. Supp. at 455;[5] *see* 🚩8 U.S.C. § 1103(a)(3) (vesting rulemaking authority in DHS); 8 C.F.R. §§ 241.1–241.19 (DHS-promulgated regulations governing the apprehension, detention, and deportation of non-citizens ordered removed); *cf. United States v. Persico*, 520 F. Supp. 96, 101 (E.D.N.Y. 1981) (holding IRS investigation to be § 1505 "proceeding" under 🚩*Higgins* because the IRS "has rulemaking powers"). For these reasons, the execution of the EOIR removal order fits snugly within the meaning of the word "proceeding" in § 1505.

**\*5** The Defendant would prefer a narrower construction of "proceeding." Citing Black's Law Dictionary's definition of "administrative proceeding" and cases interpreting 18 U.S.C. § 1512, the Defendant argues that "proceeding" in § 1505 ought to be read to require formality in the form of "determin[ations]," "findings," and a "quasi-judicial" process. Mot. Dismiss 4 (citing, chiefly, 🚩*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013)). But these authorities are inapposite because none purport to define the operative, standalone term "proceeding" as found in § 1505. Black's Law Dictionary's definition of and commentary to "proceeding"—the only word the Court must define here—is more applicable and thus persuasive than its definition of "administrative proceeding." The Court accordingly informs its analysis with the former. Likewise, cases interpreting § 1512 are no help here because 18 U.S.C. § 1512 covers only obstruction of "*official* proceedings," whereas 18 U.S.C. § 1505 covers "*any* pending proceeding." It thus makes sense that Congress intended for § 1512 to require a certain formality that § 1505 does not. *See, e.g.,* 🚩*Ermoian*, 752 F.3d at 1170 ("[T]he descriptor 'official' indicates a sense of formality ...."), *cited in* Mot. Dismiss 4; 🚩*United States v. Ramos*, 537 F.3d 439, 463 (5th Cir. 2008) (" '[O]fficial proceeding' is consistently used throughout § 1512 in a manner that contemplates a formal environment ...."), *cited in* Mot. Dismiss 4; *see also* 2A N. Singer, Sutherland Statutory Construction § 46:6 (7th ed. Nov. 2023 update) ("Different words used in the same, or a similar, statute are assigned different meanings whenever possible.... Where a legislature includes particular language in one section of a statute but omits it from another section of the same or a related act, it generally acts intentionally and purposely in the disparate inclusion or exclusion.").

Accompanying his (unavailing) formality argument, the Defendant also makes much of the alleged "ministerial" nature of DHS's and ICE's execution of a removal order in his argument that it cannot be a § 1505 "proceeding." Mot. Dismiss 3 ("ministerial"); *id.* at 4 ("purely ministerial"); Def.'s Reply 3 ("ministerial"). But at oral argument, defense counsel conceded that there are some ministerial agency acts that *are* covered § 1505 "proceedings." The Defendant thus can no longer be arguing that an agency step or stage is *per se* not a § 1505 "proceeding" just because it is ministerial.[6] This argument thus fails as well.

The Defendant also argues that reading "proceeding" in § 1505 to not require formality (that is, reading "proceeding" as the Court does here) runs afoul of the canon against superfluity. Specifically, the Defendant argues that this reading of 18 U.S.C. § 1505 "swallows ... as a whole" 18 U.S.C. § 751, the federal escape statute, "and makes [§ 751] completely redundant." Mot. Dismiss 5. But the Government noted at oral argument that the Defendant's proposed reading of "proceeding" in § 1505 as identical to "official proceeding" in § 1512 would itself create redundancy between §§ 1505 and 1512. So, redundancy appears unavoidable here.

But even ignoring the Government's point and accepting the Defendant's arguments that the Court's reading creates overlap between § 1505 and § 751 would not change the result here. The Supreme Court has explained that "[r]edundancy is not a silver bullet" in statutory interpretation, 🚩*Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. ––––, 139 S. Ct. 873, 881, 203 L.Ed.2d 180 (2019), because "redundancies are common in statutory drafting," 🚩*Pugin v. Garland*, 599 U.S. 600, 609, 143 S.Ct. 1833, 216 L.Ed.2d 572 (2023). "Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct." 🚩*Hubbard v. United States*, 514 U.S. 695, 715 n.14, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995). "Sometimes the better overall reading of the statute contains some redundancy;" that is not fatal to the better interpretation. 🚩*Rimini St.*, 139 S. Ct. at 881. Further, the Court finds no ambiguity in the term "proceeding" in § 1505 (nor does the Defendant allege any), and the Court finds its interpretation of "proceeding" fully in line with the term's plain meaning.

The antisuperfluity cannon cannot require an alternative result in these circumstances. *See, e.g.,* Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (internal citations and quotation marks omitted)); United States v. Albertini, 472 U.S. 675, 680, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985) ("[I]nterpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature.").

**\*6** Because EOIR Immigration Court "proceedings" are § 1505 "proceedings," and the execution of an EOIR-issued removal order is one of those EOIR Immigration Court "proceedings," DHS's and ICE's execution of an EOIR removal order is a § 1505 "proceeding." The Defendant's arguments to the contrary are all unavailing. The Indictment thus sufficiently alleges a "pending" § 1505 "proceeding," and the Court rejects the Defendant's arguments to dismiss Count One on this basis.

**B. Charging the Same Offense;** *Blockburger*
The second issue is whether 18 U.S.C. § 1505 and 18 U.S.C. § 751(a) are the "same offense" under *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Court holds that they are not.

The elements of the felony obstruction of agency proceedings charge under 18 U.S.C. § 1505 are: (1) on or about the date set forth in the indictment, a "proceeding" was "pending" "before any department or agency of the United States;" (2) the defendant knew that a proceeding was pending before any department or agency of the United States; and (3) the defendant "corruptly ... endeavor[ed] to influence, obstruct, or impede the due and proper administration of the law under which [the] pending proceeding [wa]s being had[.]" 18 U.S.C. § 1505; *see* United States v. Hernandez, 199 F.3d 1328 (4th Cir. 1999) (unpublished table opinion); 2 Modern Federal Jury Instructions-Criminal ¶ 46.04. And the elements of the instant misdemeanor escape from custody charge under 18 U.S.C. § 751(a) are: (1) the defendant was in custody by direction of the Attorney General (or in the custody of an officer or employee of employee of the United States pursuant to lawful arrest) for the purpose of "exclusion or expulsion proceedings under the immigration laws;" (2) the defendant left custody without permission; and (3) the defendant knew he did not have permission to leave federal custody. 18 U.S.C. § 751(a); *see* United States v. Bailey, 444 U.S. 394, 404–05, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); United States v. Evans, 159 F.3d 908, 910 (4th Cir. 1998); 1 Modern Federal Jury Instructions-Criminal ¶ 28.01.

The Court holds that the two counts do not charge the "same offense" because 18 U.S.C. § 1505 and 18 U.S.C. § 751(a) each "requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180. The *mens rea* elements set § 1505 a step beyond § 751(a). Section 1505 requires proof that a defendant "corruptly ... endeavor[ed]" to obstruct a proceeding, that is, that the defendant acted with "specific intent." United States v. Mitchell, 877 F.2d 294, 301 n.8 (4th Cir. 1989) ("Corruptly endeavoring [to obstruct] is a crime of specific intent ...."). Section 751(a), on the other hand, requires only that a defendant acted "knowingly," or with "general intent." *See* Bailey, 444 U.S. at 404–05, 100 S.Ct. 624; *id.* at 408, 100 S.Ct. 624 ("[T]he cases have generally held that, except in narrow classes of offenses, proof that the defendant acted *knowingly* is sufficient to support a conviction. Accordingly, we hold that the prosecution fulfills its burden under § 751(a) if it demonstrates that an escapee *knew* his actions would result in his leaving physical confinement without permission." (emphases added)); *see also* 1 Modern Federal Jury Instructions-Criminal ¶ 28.01 cmt. to Third Element—Knowing Conduct ("[I]n United States v. Bailey, the Supreme Court stated that specific intent is not an element of the offense of escape[.]" (footnote and internal quotation marks omitted)). Under *Blockburger*, a statute that requires proof of specific intent is not the "same offense" as one requiring only proof of knowledge. *See* United States v. King, 3:22-cr-163, 2023 WL 3922656, at \*3 (W.D.N.C. April 12, 2023) ("There is a difference between specifically intending ... and merely knowing .... [T]he Court finds that the application of the *Blockburger* test yields a close call, but the result is that the elements of the statute[s] are different upon examination."), *report and recommendation adopted*, 2023 WL 3452061, at \*2 (W.D.N.C. May 15, 2023) ("[T]he magistrate judge correctly found that [the counts] ... are not multiplicious because [the statutes] have different intent requirements."). Thus, § 1505 is not the same offense as §

751(a).

**\*7** And § 751(a) is not a lesser-included offense in (and thus also not the "same offense" as) § 1505 because § 751(a) also requires proof of something that § 1505 does not. Section 751(a) requires the government to prove that the defendant was in federal custody. *See, e.g.*, 1 Modern Federal Jury Instructions-Criminal ¶ 28.01. But § 1505 does not categorically require the same. *See, e.g.*, 2 Modern Federal Jury Instructions-Criminal ¶ 46.04. A person need not be in federal custody to commit § 1505 obstruction. Though, here, the Government may use the (alleged) facts that the Defendant was in, but then left, federal custody as proof that he obstructed a § 1505 proceeding, that does not matter in the *Blockburger* analysis. Rather, the Court's "exclusive focus ... is upon the elements of the statutory provisions," not "the particular facts offered to convict" a defendant. *United States v. Allen*, 13 F.3d 105, 109 n.4 (4th Cir. 1993). Thus, § 751(a) is not a lesser-included offense, and therefore is not the "same offense" as § 1505, either.

Because 18 U.S.C. § 1505 and 18 U.S.C. § 751(a) each require proof of a fact that the other does not, they are not the same offense, and there is no Double Jeopardy problem with this Indictment. The Court accordingly rejects this as a basis to dismiss Count One of the Indictment as well.

### IV. CONCLUSION

The Defendant fails to show a defect in this Indictment warranting dismissal of Count One. The Indictment states an 18 U.S.C. § 1505 offense because it sufficiently alleges the obstruction of a "pending proceeding" before a federal department or agency. And the Indictment contains no multiplicity problem because an obstruction charge under 18 U.S.C. § 1505 and an escape charge under 18 U.S.C. § 751(a) charge are not the same offense. For these reasons, the Defendant's Motion to Dismiss Count One of the Indictment, ECF No. 24, will be denied.

An appropriate Order shall issue.

**All Citations**

Slip Copy, 2024 WL 23147

### Footnotes

[1]   All page numbers referring to documents in the record refer to such documents' page numbers as provided by CM/ECF, and not necessarily to the documents' internal numbering.

[2]   The Defendant also does not actively dispute the Government's assertion that DHS and ICE "removal proceedings" more generally (in the Indictment as well, *see* Indictment 2 ¶ 8) are § 1505 "proceedings." *See* Gov't's Resp. 3–5. *See generally* Mot. Dismiss; Def.'s Reply, ECF No. 31.

[3]   The Government insists that the question of whether DHS's and ICE's execution of an EOIR Court removal order is a "proceeding" is instead a question about whether EOIR Immigration Court "proceedings" were "pending," and the Government's position is that the question of "whether the proceedings were pending is a factual question that should be addressed at trial, not now." *See* Gov't's Resp. 8 (citing 2 Modern Federal Jury Instructions–Criminal ¶ 46.04). The Court sees the issue differently. Even accepting the Government's "pending" framing, the instant "pending" question contains a nested "proceeding" question—the Court must determine whether the "proceeding" alleged to have been "pending" was a "proceeding" to begin with. As the Government acknowledges, the issue of whether an agency act constitutes a "proceeding" under § 1505 "presents a question of law." *United States v. Leo*, 941 F.2d 181, 198 (3d Cir. 1991), *quoted in* Gov't's Resp. 5 n.2.

To be sure, the jury would still need to determine whether the Government has adduced facts at trial sufficient to prove that the alleged "pending proceeding" was, as a matter of fact, "pending." However, there is the preliminary

legal question about whether the alleged "pending proceeding" (here, DHS's and ICE's execution of the EOIR removal order, *see* Indictment 2 ¶ 8) is, as a matter of law, a "proceeding" under § 1505. The Court construes the Government's arguments accordingly.

[4] Though counsel for the Defendant analogizes to criminal judicial proceedings, an analogy to civil proceedings also makes sense because, technically, "removal proceedings are civil in nature." *Padilla v. Kentucky*, 559 U.S. 356, 365, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (citing *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984)).

[5] Though *Higgins* used only the term "agency" in its opinion (because it was dealing with an agency in that case, the FBI), there is no legal distinction between an "agency" and a "department" (such as DHS) for § 1505 purposes. *See, e.g.*, 18 U.S.C. § 1505 (outlawing obstruction of "any pending proceeding ... before any *department or agency* of the United States" (emphasis added)); § 6 ("As used in this title: ... [t]he term 'ag*id.*ency' includes any department ... of the United States.").

[6] Additionally, the Court disagrees with the embedded presumption that DHS's and ICE's execution of a removal order is purely ministerial. To the contrary, there is caselaw that discusses DHS's and ICE's "*discretion* to decide whether and when to carry out [a] removal order" in the context of a legal challenge to that discretion. *Balogun v. Sessions*, 330 F. Supp. 3d 1211, 1212 (C.D. Cal. 2018) (emphasis added). Indeed, that district court stressed that "the Supreme Court has emphasized that the 'discrete acts of commenc[ing] proceedings, adjudicat[ing] cases, [and] *execut[ing] removal orders*,' ... occupy 'a special province of the Executive—its prosecutorial *discretion*.' " *Id.* at 1214 (emphases added) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483, 483, 489, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999))).

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.