UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff,*

    *v.*                                    Case No. 25-CR-0089-LA

HANNAH C. DUGAN,

    *Defendant.*

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## MOTION FOR RECONSIDERATION

### I.

### OVERVIEW

The government's response to the motion for reconsideration understandably seeks to play down the obvious ramifications of *United States v. Hernandez*, -- F.4th --, No. 24-4665, 2026 WL 1028348 (April 16, 2026). Had this matter been litigated in federal court in Virginia or any other state within the Fourth Circuit, Hannah Dugan would be not guilty as a matter of law to the charge under 18 U.S.C. § 1505. Yet the government response offers no compelling reason why a federal prosecution in Wisconsin should have a different result.

## THE PARALLEL FACTS OF *HERNANDEZ* AND *DUGAN*

### A. The sequences of events for E.F.R. and Hernandez were essentially identical.[1]

|  | Flores-Ruiz | Zeldon Hernandez |
|---|---|---|
| Removal Order Issued (& Date) | Yes 2013 | Yes 2019 |
| Illegally present in US in violation of prior order | Yes | Yes |
| Committed violation of state law while illegally in U.S. | Yes | Yes |
| ICE I-200 Warrant Issued & Executed | Yes | No |
| ICE I-205 Warrant Issued & Executed | Yes | Yes |

In the Dugan trial, the government witness testified that the only practical difference between the I-200 warrant and the I-205 warrant was that the former was more "user friendly" with respect to arresting an individual. R.104, Tr. 526. ICE witnesses in the Dugan

---

[1] *Cf:* R.104-107, Dugan Trial Tr. 388 (2013 E.F.R. removal order); Tr. 55 (E.F.R. illegally in U.S. after removal order); Tr. 50 (E.F.R. committed state court violations); Tr. 54 (I-200 warrant issued for E.F.R.); Tr. 416 (I-205 warrant issued for E.F.R.); and 2026 WL 1028348, at *1-2 (summarizing procedural history leading to arrest of Hernandez).

case described the I-200 and I-205 as both part of the same "removal process." Tr. 223. According to the government, the I-200 warrant emphasized arrest while the I-205 emphasized removal. Tr. 526.

### B. Both cases involved ICE "enforcement."

The appellate court in *Hernandez* squarely held that ICE enforcement efforts were not "pending proceedings" under 18 U.S.C. § 1505:

> Though the district court did not consider this argument, we hold that ICE enforcement proceedings are not "pending proceeding[s] ... being had before" ICE under § 1505.

2026 WL 1028348, at *6.

In the case against Dugan, the government prosecutors and witnesses repeatedly told the jury that the Dugan obstructed an ICE proceeding that was described as an "enforcement action." They used the term more than two dozen times. *See, e.g.,* R.104-107, Trial Tr. 191, 195, 200, 201, 202, 203, 204, 205, 206, 400, 470, 516, 526. To quote just a few examples (emphasis added):

Anthony Nimitz, ICE Supervisory Detention and Deportation Officer

Q.      And what is -- we've been talking about an **enforcement action**. What is an **enforcement action**?

A.      An arrest.

Tr. 193.

Cassandra Kubiszewski, ICE Assistant Field Office Director

Q.      When Milwaukee ERO engages in **enforcement actions** at the Milwaukee County Courthouse within the public areas, does it ask courthouse personnel to facilitate those arrests in any way?

3

A.    No.

Tr. 524.

<u>Government Closing Argument</u>

So what was the endeavor that the defendant was trying to obstruct? The arrest team's ability to execute the I-200 warrant. And how did she do it? Well, first, she purposefully interfered with their arrest plan. Mr. Flores-Ruiz was exactly the type of person that ICE ERO targeted for courthouse **enforcement actions**. He had previously been removed from the United States. He was back, and he was now charged with committing violent crimes against three individuals.

Tr. 828.

**C.  Both cases alleged obstruction of ICE administrative warrants.**

In *Hernandez*, the defendant allegedly obstructed the execution of an I-205 warrant of removal.  2026 WL 1028348, at *5.  In the case against Hannah Dugan, the alleged obstruction was of an I-200 arrest warrant. Tr. 54.  Immediately after the arrest of E.F.R., ICE officers issued an I-205 removal warrant against E.F.R.  Tr. 221-22. In *Hernandez,* the government described the I-205 warrant as part of a "series of complex statutory and regulatory requirements [that arises when ICE] undertakes the removal of a noncitizen from the United States." *United States v. Hernandez,* 24-4665, R.34 at 13 (Brief of United States).[2] ICE witnesses in the Dugan case described the I-200 and I-205 as both part of the same "removal process."  Tr. 223.

---

[2] The page numbers cited to the United States Brief in *Hernandez* refer to the numbers set forth on the original pages of the brief, rather than those of the ECF.

**D. The prosecution in both cases stressed potentially complex procedures beyond the warrants themselves, undertaken to achieve the "goal" of removal.**

In the case against Hannah Dugan, the prosecution had ICE witnesses describe potentially elaborate administrative "procedures" involved in the enforcement action, all leading to the "ultimate goal" of removal. Tr. 193-209 ("ultimate goal" at Tr. 193; "procedures" at Tr. 204).

In *Hernandez,* the government made an almost identical presentation, outlining seven separate procedural steps that went beyond the warrant at issue. *United States v. Hernandez,* No. 24-4665, R.34 at 37-40 (Brief of United States).

The steps mirror the purported complexity set forth by the government here in Ex. 47 and at page 3 of its response. In *Hernandez,* the government described its "proceedings" as encompassing all of the following:

> (1) ICE needed to apply "a detailed series of guidelines designed to protect the safety of the community, the noncitizen and the officers involved. *See generally* 8 C.F.R. § 287.8;"
>
> (2) ICE needed to assess the alien's mental or physical condition under 8 U.S.C. § 1231(f)(1);
>
> (3) ICE needed to determine where to detain the noncitizen under 8 U.S.C. § 1231(g)(1);
>
> (4) ICE needed to ensure that the detention provides "adequate housing, food, safety and medical care" under 8 C.F.R. § 235.3(e);
>
> (5) "[E]specially important, ICE officials must work with foreign countries to obtain their acceptance of the returned noncitizens" pursuant to 8 C.F.R. § 241.15(b);
>
> (6) ICE must undertake physically executing the removal; and

5

(7) if unable to do all of this within a 90-day period, "a labyrinth of additional rules and regulations kick in" pursuant to 8 U.S.C. §1231(a)(6) and 8 C.F.R. §§ 241.4, 241.13, 241.14.

*Hernandez.* R.34 at 37-40.

The government in *Hernandez* summarized the  enforcement proceedings as follows:

From the investigation leading to the arrest, to the management and operation of detention facilities, and through the physical removal of the noncitizen (if successful)—ICE removal operations comprise a long series of steps, decisions, and exercises of discretion targeted at removing a given individual from the country. ICE removal operations therefore qualify as agency proceedings and are protected by § 1505.

*Id.* at 40.

The "goal" of removal and the potential complexity of subsequent procedures did not and does not change the simple fact that in both cases ICE was seeking to execute an arrest warrant and remove an illegal alien who had been subject to a final order of removal. The fact that future action may have led to criminal prosecutions (as it did in both cases) or that other complexities may arise does not change the finding that both cases alleged obstruction of an arrest warrant.  Subsequent contingencies are possible in every case in which a warrant is issued, particularly if an alien violated a prior removal order.

6

The government here also tries to distinguish the factual case in *Hernandez* by contending that Hannah Dugan obstructed proceedings at a different stage than the obstruction in *Hernandez*. Such a description ignores the fact that E.F.R. was initially ordered removed in 2013, whereas Hernandez was ordered removed in 2019. The next "step" for each, after the current location of the suspect became known, was the issuance of a warrant. The argument also ignores the testimony of government witnesses that the E.F.R. I-200 arrest was an effort to "reinstate" the 2013 removal order, Tr. 211, just as the government contended in *Hernandezs*. Moreover, if all the steps collectively constitute a "proceeding," as the government insists, logically it should not matter at what stage the interference occurs.

Regardless, the timing of the arrest was referenced only in Part A of the *Hernandez* decision. In Part B, because the government alternatively argued that the execution of the warrant was the initiation of a "new proceedings" (just as the government argues here), the majority went further and held that ICE *enforcement proceedings* as a whole are not covered by § 1505. 2026 WL 1028348, at *6-7.

Therefore, contrary to the government's response in this case, there is no practical difference between the "enforcement actions" in the two cases.

### III.

### *U.S. v. SENFFNER* AND "MERE POLICE ACTIVITY"

Echoing the dissent of Judge Wilkinson in *Hernandez,* the prosecution in this case contends that the *Hernandez* holding is inconsistent with *United States v. Senffner*, 280 F.3d 755, 760–61 (7th Cir. 2002). The majority in *Hernandez* held otherwise, squarely addressing *Senffner* and finding that the Seventh Circuit holding supported rather than contradicted the

7

*Hernandez* majority. *Hernandez,* 2026 WL 1028348, at \*5-7. First, the majority noted that *Senffner* (consistent with several other circuits) excluded "mere police activity" from the coverage of 18 U.S.C. § 1505.[3] *See* 280 F.3d at 761; *see also* 2026 WL 1028348, at \*5, *citing Rice v. United States*, 356 F.2d 709, 712 (8th Cir. 1966); *United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994); *United States v. Kirst*, 54 F.4th 610, 621 (9th Cir. 2022). The majority in *Hernandez* found that ICE enforcement actions at issue "mirror traditional law enforcement activity." 2026 WL 1028348, at \*5.[4]

Second, the majority found that *Senffner* dealt with pending litigation in federal court and that is quite different from the "isolated enforcement action" at issue with the execution of an ICE arrest warrant. 2026 WL 1028348, at \*6.

Third, the majority noted that the holdings in *Senffner* predated Supreme Court decisions in *Fischer v. United States*, 603 U.S. 480 (2024) (narrowing definition of obstruction under 18 U.S.C. § 1512); and *Marinello v. United States*, 584 U.S. 1 (2018) (narrowing definition of obstruction under 26 U.S.C. § 7612), both of which cautioned against prior broad reading of obstruction statutes. 2026 WL 1028348, at \*5-7. And recall that even while *Senffner* described § 1505 as "rather broad[]," *Senffner*, 280 F.3d at 761, the modifying adverb suggests some limit. Executing a warrant is classic "mere police activity," a common-sense approach recognized by both courts.

---

[3] The government's response to the motion for reconsideration makes no mention of this *Senffner* limitation.

[4] The majority decision also characterized the enforcement action as "akin to a police officer effectuating an arrest upon a magistrate's warrant." 2026 WL 1028348, at \*5. By contrast, the agency action in *Senffner* was undertaken by the Securities and Exchange Commission, which has no arrest power. *See* 15 U.S.C. § 78u (listing SEC authority).

At worst for the Defense, *Senffner* is silent on the subject of ICE enforcement, as the Fourth Circuit majority emphasized that this was a question of first impression. *See* 2026 WL 1028348 at *3 ("This is a matter of first impression: no Circuit has determined whether § 1505 encompasses immigration removal proceedings").

**IV.**

**PERSUASIVE FOR THEE, BUT NOT FOR ME**

Having previously convinced this Court that the district court decision in *Hernandez* was persuasive to the definition of "pending proceeding," the government now characterizes the contrary Fourth Circuit holding in the same case as an "outlier" that should be summarily ignored by this Court.

All through this case, the parties disputed the breadth of the definition of "pending proceeding." The government's initial *Hernandez* filing noted as much. R.75 at 1 ("The issue is related to the question still pending before the Court about how to define 'proceeding' in the jury instructions.") Prior to the submission of the government's *Hernandez* letter, the Defense had sought a definition of "pending proceeding" that excluded conduct associated with the execution of an ICE warrant, R.57 at 14; and the government had vigorously objected to that definition, R.68 at 12. When the Court adopted the government's position by relying on the district court decision in *Hernandez,* the government certainly did not complain. R.97 at 4-5.

The government also did not backtrack in any way when the Court again relied upon the same district court in denying the post-verdict motions under Rules 29 and 33. R.117 at

9

27. But presently, in the face of a contrary on-point holding from the Fourth Circuit, the government now finds *Hernandez* to be essentially irrelevant.

The Fourth Circuit is the only appellate court in the nation to squarely address the issue raised throughout this case: whether obstructing the execution of an ICE administrative arrest warrant constitutes obstructing a pending proceeding under 18 U.S.C. § 1505. Surely the appellate court's answer is worthy of more than the government is willing to concede in its response to the motion for reconsideration. The decision provides compelling grounds for this Court to reconsider and reverse its prior rulings.

**V.**

**RULE OF LENITY**

This Court has been reluctant to consider the rule of lenity, noting that the rule should apply only "if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the court must simply guess as to what Congress intended." *See* R.117, n. 17. Yet the Fourth Circuit analyzed the text, structure, history and purpose of § 1505 and reached a decision contrary to the one essential to the government in this case. The Fourth Circuit's conclusion would result in Dugan's acquittal as a matter of law and the government response never addresses that reality. Even if this Court is reluctant to agree with the Fourth Circuit analysis, that court's reasoning confirms at least a grievous ambiguity or uncertainty warranting lenity in Dugan's favor. *See Loper Bright Enterprises. v. Raimondo*, 603 U.S. 369, 434 (2024) ("Since the founding, American courts have construed ambiguities in penal laws against the government and with lenity toward affected persons") (Gorsuch, J. concurring).

## VI.

## CONCLUSION

Based on the Fourth Circuit decision in *United States v. Hernandez,* and all of the Hannah Dugan earlier arguments, this Court should reconsider its substantial prior reliance on a now-overturned district court case. In addition, this Court should follow the holding of the Fourth Circuit and find that interfering with an ICE arrest warrant is not obstructing a "pending proceeding" under § 1505. The Court then should enter a judgment of acquittal under FED. R. CRIM. P. 29. Alternatively, for similar reasons, the Court should order a new trial on Count Two in the interests of justice under FED. R. CRIM. P. 33(a), (b)(2).

Dated this 7th day of May, 2026.

Respectfully submitted,

HANNAH C. DUGAN, *Defendant*

*s/ Steven M. Biskupic*
Steven M. Biskupic
 Wisconsin Bar No. 1018217

STEVEN BISKUPIC LAW OFFICE, LLC
P.O. Box 456
Thiensville, Wisconsin 53092
bisklaw@outlook.com

*s/ Jason D. Luczak, Nicole M. Masnica*
Jason D. Luczak
 Wisconsin Bar No.  1070883
Nicole M. Masnica
 Wisconsin Bar No. 1079819

GIMBEL, REILLY, GUERIN & BROWN LLP
330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
(414) 271-1440
jluczak@grgblaw.com
nmasnica@grgblaw.com

*s/ Dean A. Strang*
R. Rick Resch
  Wisconsin Bar No. 1117722
Dean A. Strang
  Wisconsin Bar No. 1009868

STRANGBRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
(608) 535-1550
rick@strangbradley.com
dean@strangbradley.com

12