# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**
                                     **Case No. 25-CR-89**

**HANNAH C. DUGAN**
        **Defendant.**

## DECISION AND ORDER

Defendant Hannah Dugan moves for reconsideration of the order denying her motion for judgment of acquittal and/or a new trial. She bases the motion on United States v. Hernandez, 173 F.4th 94 (4th Cir. 2026), in which a panel of the Fourth Circuit Court of Appeals voted 2-1 to reverse a district court decision upon which I had previously relied.

## I. BACKGROUND

The facts and background of the case are set forth in detail in my previous order. I focus herein on the facts relevant to defendant's motion for reconsideration, which hinges on the meaning of the term "any pending proceeding."

The government charged defendant with obstructing a proceeding before the Department of Homeland Security (DHS), contrary to 18 U.S.C. § 1505, namely the administrative arrest of Eduardo Flores-Ruiz for purposes of immigration removal proceedings. Section 1505 provides, in pertinent part:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any

inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress [shall be fined or imprisoned for not more than 5 years].

18 U.S.C. § 1505.

The government proposed the jury be instructed that the term "pending proceeding":

simply means any process taking place in the manner and form prescribed for conducting business by or before a department or government agency, including all steps and stages of any agency administrative or investigative action from its inception to its conclusion. This includes all steps related to removal or reinstatement of removal by DHS and ICE, including the execution of an administrative arrest warrant.

(R. 55 at 25.) The government drew this language primarily from Rice v. United States, 356 F.2d 709, 712 (8th Cir. 1966). (R. 55 at 26.)[1]

Defendant proposed the jury be instructed that:

An effort to arrest a person, or to execute an arrest warrant of any kind, is not a "proceeding" within the meaning of the crime charged in Count 2. As used in that count, the term "proceeding" means an actual administrative or judicial process apart from an attempt to arrest someone that was pending at the time, or at least was reasonably foreseeable to the defendant.

(R. 57 at 14.) In support, defendant cited United States v. Kirst, 54 F.4th 610, 621 (9th Cir. 2022) ("Rather, it was 'a "proceeding" within the meaning of § 1505,' because the agency had the power to issue subpoenas and compel testimony under oath. . . So, too, here. In conducting an investigation of an airplane crash, the NTSB has authority to issue subpoenas and to compel testimony under oath.") (quoting United States v. Kelley, 36 F.3d 1118, 1123 (D.C. Cir. 1994)), and United States v. Senffner, 280 F.3d 755, 761 (7th Cir. 2002) ("And, sufficient to

---

[1]The Seventh Circuit has no pattern instruction for § 1505 offenses. In Rice, the court held: "Proceedings before a governmental department or agency simply mean proceeding in the manner and form prescribed for conducting business before the department or agency, including all steps and stages in such an action from its inception to its conclusion." 356 F.2d at 712.

distinguish an investigative proceeding (from a mere police investigation) is the authority to issue subpoenas and administer oaths.") (citing Kelley, 36 F.3d at 1127). (R. 57 at 14-15.)

The government opposed defendant's proposed instruction, noting that the term "proceeding" is "defined rather broadly" for purposes of § 1505. Senffner, 280 F.3d at 761; see also Rice, 356 F.2d at 712 ("'Proceeding' is a comprehensive term meaning the action of proceeding—a particular step or series of steps, adopted for accomplishing something."). While defendant proposed the jury be instructed that an "effort to arrest a person, or to execute an arrest warrant of any kind, is not a proceeding," this language was not, the government argued, contained in or supported by Kirst, Kelley, or Senffner. (R. 68 at 12.)

Kirst involved an NTSB investigation into a plane crash. The defendant, who had lied to the NTSB, argued that the investigation could not be a proceeding because the agency lacked regulatory or adjudicatory authority. 54 F.3d at 619. The Ninth Circuit disagreed, holding that an investigation by an agency with the power to issue subpoenas was a proceeding. Id. at 621. The government asserted that this decision did not have anything to do with whether an administrative arrest warrant could be a step in an agency proceeding. (R. 68 at 13.)

In Kelley, the defendant argued that the investigative activities of USAID-OIG fell outside of § 1505 because the term "proceeding" only applied to "adjudicatory or rule-making activities." 36 F.3d at 1127. The D.C. Circuit disagreed, finding that although a "mere police investigation" would not be a proceeding, even investigative activities can qualify as proceedings in part because the agencies might have some adjudicative power or the ability to enhance their activities through subpoenas or administrative warrants. See id. The government argued that, rather than supporting defendant's position, Kelley confirmed that issuing or executing an administrative warrant can be a step in a proceeding. (R. 68 at 13.)

3

Finally, in <u>Senffner</u>, the defendant argued that the SEC's effort to trace funds was not a proceeding because the SEC had no independent authority to freeze or distribute assets or impose civil penalties but instead needed to obtain an order from a court. 280 F.3d at 760. Citing <u>Kelley</u>, the Seventh Circuit found that an SEC investigation was a proceeding rather than a "mere police investigation" given the agency's ability to issue subpoenas, even if aspects of the investigation did not proceed under that authority. <u>Id.</u> at 762.

The government noted that <u>Senffner</u> also cited <u>United States v. Schwarz</u>, 924 F.2d 410 (2nd Cir. 1991), where customs officials at an airport detained a shipment of arms destined for Poland. When looking into the shipment, officials interviewed the defendants, who gave false information. The defendants argued that the interview was not a "proceeding," but the Second Circuit disagreed, finding that term is to be applied broadly and that the "interview of [the defendants] falls within the meaning of a 'proceeding' under § 1505." <u>Id.</u> at 423.

The government later provided supplemental authority on the issue: <u>United States v. Hernandez</u>, No. 3:23cr122, 2024 WL 23147 (E.D. Va. Jan. 2, 2024). (R. 75.) In <u>Hernandez</u>, the defendant was ordered removed pursuant to a final order of removal in December 2019. In May 2023, he was taken into ICE custody awaiting deportation. <u>Id.</u> at *1. After the defendant escaped from ICE custody, the government charged him with obstructing a proceeding in violation of 18 U.S.C. § 1505. <u>Id.</u> The defendant moved to dismiss the indictment, arguing that the 2023 execution of the removal order was not part of the proceeding, which ended upon the issuance of the final order of removal in 2019. <u>Id.</u> at *4. In rejecting this argument, the court relied upon the definition of "proceeding" from the Eighth Circuit's decision in <u>Rice</u>, holding that the term includes the step of executing a final order, including ICE's execution of the final removal order of the defendant. <u>Id.</u>

4

Defendant responded that <u>Hernandez</u> was on appeal, with the holding the government cited as the primary issue. (R. 76 at 1.) Defendant argued that the court should instead rely on <u>United States v. McHugh</u>, 583 F. Supp. 3d 1, 13 (D.D.C. 2022), in particular its discussion of the term "before," which refers to some proceeding in the presence of the government agency itself and concerning some second entity. (R. 76 at 1-2.)

I instructed the jury as follows:

> The Department of Homeland Security (DHS) is a department of the United States and Immigration and Customs Enforcement (ICE) is an agency within DHS. In addition, "pending proceeding" simply means any process taking place in the manner and form prescribed for conducting business by or before a department or government agency, including all steps and stages in such an action from its inception to its conclusion.

(R. 94 at 22.)

In support, I cited <u>United States v. Hernandez</u>, No. 3:23cr122, 2024 U.S. Dist. LEXIS 649, at *7 (E.D. Va. Jan. 2, 2024) (citing <u>Rice v. United States</u>, 356 F.2d 709, 712 (8th Cir. 1966)), and <u>United States v. Senffner</u>, 280 F.3d 755, 761 (7th Cir. 2002). (R. 97 at 4 n.5.) I concluded that defendant's proposed instruction defined "proceeding" too narrowly under § 1505. I found <u>Hernandez</u> and the cases it cited persuasive on this point. Defendant relied on <u>McHugh</u>, but that case concerned a different statute, § 1512, which refers to an "official proceeding." The <u>McHugh</u> court held that the term "official proceeding" as set forth in § 1515(a)(1) should be defined narrowly. 583 F. Supp. 3d at 12. However, the Seventh Circuit has held that the term "proceeding" is defined "rather broadly" for the purpose of § 1505, <u>Senffner</u>, 280 F.3d at 761, consistent with the <u>Hernandez</u> court's distinction between § 1505 and § 1512. <u>See</u> 2024 U.S. Dist. LEXIS 649, at *13-15. I further noted that the first sentence of the defense proposal did not appear to be supported by the authorities cited. Finally, I noted

5

that § 1505 did not require a "second, outside party." In any event, the proceeding here did involve a second party, i.e., Flores-Ruiz. (R. 94 at 5.)

At trial, the government presented testimony from Anthony Nimtz, a supervisory detention and deportation officer with Immigration & Customs Enforcement (ICE), Enforcement & Removal Operations (ERO), who discussed the steps in a removal proceeding. (Trial Tr. at 210-23; see Govt.'s Ex. 47, demonstrative exhibit.) The government presented similar testimony from assistant field office director Cassandra Kubiszewski (Tr. at 525-27) and from ICE/ERO deportation officer Joseph Vasconcellos (Tr. at 414-18). Those steps are:

1. Check databases

2. Identify target

3. Confirm immigration status

4. Determine criminal history

5. Prepare arrest operation plan, e.g., FOW (field operations worksheet)

6. Draft and submit arrest warrant (e.g., Form I-200, Arrest Warrant)

7. Authorized Immigration Officer determines whether probable cause exists and, if so, signs Arrest Warrant (Form I-200)

8. Arrest target

9. Serve and sign Form I-200 Certificate of Service

10. Complete and serve charging document (e.g., Form I-871, Notice of Intent/Decision to Reinstate Prior Removal Order)
    a. Contest prior removal? (Supervisor or OPLA adjudicates)
    b. Asylum claim? (Refer to USCIS for adjudication)
    c. 8 U.S.C. § 1326 eligible? (Refer to USAO for prosecution)

11. Decision, Order, and Certification Reinstating Prior Removal Order by Authorized Deciding Official (Form I-871)

12. Authorized Immigration Officer signs Warrant of Removal (Form I-205)

6

13. Fingerprinting, verification, and removal

(R. 123 at 5; Govt.'s Ex. 47.)

In the present case, the government alleged that defendant obstructed an arrest (step eight). Regarding the earlier steps, Vasconcellos testified that he searched agency databases with regard to Flores-Ruiz, learning that he had previously been removed from the United States in 2013 and that he had recently been arrested in Milwaukee County. (Trial Tr. at 388.) Through biometric confirmation (fingerprints) Vasconcellos learned that the Eduardo Flores-Ruiz arrested in Milwaukee County was the same person removed years earlier. (Trial Tr. at 388-89.) Vasconcellos further confirmed that Flores-Ruiz had no legal status in the United States. Vasconcellos then generated a FOW and I-200 warrant for arrest (Trial Tr. at 389. Govt.'s Ex. 1A), sending the I-200 to his supervisor, Nimtz, for approval; Nimtz determined that there was probable cause to believe that Flores-Ruiz was removable from the United States (Trial Tr. at 391) and signed the warrant (Trial Tr. at 392). The FOW Vasconcellos prepared included Flores-Ruiz's criminal history, including his recent arrest for strangulation/suffocation and domestic abuse. (Trial Tr. at 393; Govt's Ex. 45.) Vasconcellos learned that Flores-Ruiz was scheduled to appear in court on April 18, 2025, and he and his team planned to arrest Flores-Ruiz at the courthouse. (Trial Tr. at 394.) As discussed in the earlier Rule 29 decision, the government presented evidence that defendant interfered with the agents' plan to arrest Flores-Ruiz inside the courthouse; nevertheless, the agents were able to apprehend and arrest Flores-Ruiz after a brief foot chase outside the courthouse. (R. 117 at 9-10, citing Trial Tr. at 130, 267-69, 327, 329, 544-45.)

Nimtz testified that ICE/ERO cannot remove someone immediately upon arrest pursuant to an administrative warrant; there are additional steps in the process. (Trial Tr. at 211.) At the

7

time of arrest, ICE would serve and sign the I-200 under the certificate of service portion. (Trial Tr. at 211.) Vasconcellos testified that he certified that he served the I-200 on Flores-Ruiz in this case. (Trial Tr. at 414.)

Nimtz testified that they would then take a sworn statement from the alien and complete and serve the charging document, in this case a notice of intent to reinstate the prior order of removal. (Trial Tr. at 211.) At this step, the alien is afforded an opportunity to contest the prior order of removal and/or to make a claim for asylum. (Trial Tr. at 212.) If the person makes an asylum claim, the issue is referred to US Citizenship & Immigration Services (USCIS) for adjudication; the alien cannot be removed until the claim is adjudicated. (Trial Tr. at 213.) Also at this step, ICE makes a determination whether the alien is subject to prosecution for illegal reentry under 8 U.S.C. § 1326 and, if so, may make a referral to the United States Attorney's Office (USAO) for prosecution. (Trial Tr. at 213-24.) Vasconcellos testified that Flores-Ruiz declined to make a statement (Trial Tr. at 415), and he did not make a claim for asylum (Trial Tr. at 416). Nimtz testified that a prosecution referral was made in this case, and Flores-Ruiz was criminally charged under § 1326. (Trial Tr. at 214; see also Trial Tr. at 517.)

Nimtz testified that the next step is completion of form I-871, notice of intent to reinstate the prior order of removal, and then issuance of an I-205, warrant of removal or deportation. (Trial Tr. at 214.) In this case, the I-871 was completed and signed by acting supervisor Michael Gavin in Nimtz's absence, and given to Flores-Ruiz; Flores-Ruiz declined to make a statement contesting the determination and refused to sign it. (Trial Tr. at 416-17, 219-20.) The I-205 was also completed and signed by Gavin. (Trial Tr. at 221, 416.) Vasconcellos obtained Flores-Ruiz's biographical information, including his fingerprints and photo (Trial Tr. at 418), and Flores-Ruiz was physically removed on November 13, 2025 (Trial Tr. at 223).

8

The jury convicted defendant of violating § 1505. (R. 96.) In her motion for acquittal and/or a new trial, defendant argued, inter alia, that § 1505 should be construed narrowly. I rejected this argument, stating:

> In ruling on the party's jury instruction dispute over the meaning of the term "proceeding," I found United States v. Hernandez, No. 3:23cr122 (RCY), 2024 U.S. Dist. LEXIS 649, at *7 (E.D. Va. Jan. 2, 2024) (citing Rice v. United States, 356 F.2d 709, 712 (8th Cir. 1966)), persuasive. (R. 97 at 5.) As defendant notes, Hernandez is on appeal, with the case argued before the Fourth Circuit in January 2026. (R. 109 at 33 n.7.) However, nothing in the current submission persuades me that the instructions were wrong. As I noted in the instructions order, the Seventh Circuit has held that the term "proceeding" is defined "rather broadly" for the purpose of § 1505, United States v. Senffner, 280 F.3d 755, 761 (7th Cir. 2002), undermining defendant's claim, based on Supreme Court decisions construing different statutes, that § 1505 must be construed narrowly. As the government notes, other circuits construing § 1505 have also recognized the broad nature of the term "proceeding." (R. 113 at 29, collecting cases.)

(R. 117 at 27-28.)

After the Fourth Circuit issued its decision in Hernandez, defendant moved for reconsideration. The government responded and defendant replied, and I held oral argument. I now deny the motion.

## II. MOTIONS FOR RECONSIDERATION

While the Federal Rules of Criminal Procedure do not authorize motions for reconsideration, they are permitted as a matter of general practice. United States v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010). Such motions "'serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" United States v. Love, No. 1:25-cr-00045-JPH-MJD, 2026 U.S. Dist. LEXIS 4075, at *2 (S.D. Ind. Jan. 9, 2026) (quoting Eberhardt v. Walsh, 122 F.4th 681, 688 (7th Cir. 2024)); United States v. Canfield, No. 25-CR-150, 2025 U.S. Dist. LEXIS 255445, at *3 (E.D. Wis. Dec. 10, 2025) ("The purpose of a motion to reconsider is 'to correct manifest errors of law or fact or to present newly discovered

9

evidence.'") (quoting Caisse Nationale de Credit Agricole v. CBI Indus., 90 F.3d 1264, 1269 (7th Cir. 1996)); see also United States v. Kramer, No. 87-cr-40070 JPG, 2022 U.S. Dist. LEXIS 212765, at *2 (S.D. Ill. Nov. 23, 2022) ("This rule allows district courts the opportunity to correct their own alleged errors before burdening a court of appeals with correcting them.") (citing Rollins, 607 F.3d at 502).

Motions for reconsideration are not to be granted lightly. As one court put it:

> The standard is well-established and exacting: a court should only grant a motion to reconsider where the court's misapprehension has produced a manifest error of fact or law, or where a controlling or significant change in fact or law has materialized since the court issued its initial ruling. Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990); Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000). Such circumstances are rare, and the moving party bears a heavy burden to prove one exists. Bedford v. DeWitt, 695 F. Supp. 3d 998, 1001 (N.D. Ill. 2023).

United States v. Reeves, No. 21 CR 50027, 2025 U.S. Dist. LEXIS 64872, at *7 (N.D. Ill. Apr. 4, 2025); see also United States v. Linder, No. 12 CR 22, 2013 U.S. Dist. LEXIS 18346, at *5-6 (N.D. Ill. Feb. 12, 2013):

> The purpose of a Motion to Reconsider is to "bring the court's attention to newly discovered evidence or to a manifest error [of] law or fact." Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 368 (7th Cir. 2003). A party moving for reconsideration bears a heavy burden. See Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1270 (7th Cir. 1996). A motion to reconsider is not the appropriate vehicle to rehash previously rejected arguments or introduce new legal theories. See Musch v. Domtar Industries, Inc., 587 F.3d 857, 861 (7th Cir. 2009); Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 404 (7th Cir. 1986). Nor should it be used to advance evidence, arguments, and legal theories that were available earlier and could have been presented before the district court entered its judgment. See Sigsworth v. City of Aurora, 487 F.3d 506, 512 (7th Cir. 2007) (citing LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995)); Anderson v. Flexel, Inc., 47 F.3d 243, 247-48 (7th Cir. 1995); King v. Cooke, 26 F.3d 720, 726 (7th Cir. 1994). Instead, motions for reconsideration are utilized for very limited purposes: to correct manifest errors of law or fact, present newly discovered evidence, or to address an intervening and substantial change in the controlling law occurring after the submission of the issues to the court. See Cosgrove v. Bartolotta, 150 F.3d 729, 732 (7th Cir.

10

1988); <u>Publishers Resource, Inc. v. Walker-Davis Publications, Inc.</u>, 762 F.2d 557, 561 (7th Cir. 1985) (quoting <u>Keene Corp. v. International Fidelity Ins. Co.</u>, 561 F. Supp. 656, 665-666 (N.D. Ill. 1982), <u>aff'd and adopted in relevant part</u>, 736 F.2d 388, 393 (7th Cir. 1984)). A manifest error of law is the "disregard, misapplication, or failure to recognize controlling precedent." <u>Oto v. Metropolitan Life Ins. Co.</u>, 224 F.3d 601, 606 (7th Cir. 2000) (quoting <u>Sedrak v. Callahan</u>, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

### III. DISCUSSION

### A.   Positions of the Parties

In her request for reconsideration, defendant notes that I previously relied on the district court's decision in <u>Hernandez</u> to conclude that the term "pending proceeding" is sufficiently broad to encompass the obstruction of an ICE administrative warrant. (R. 120 at 1, 3.) I also distinguished attempts by the defense to link limitations imposed by the Supreme Court on other obstruction statutes to the language of 18 U.S.C. § 1505. (R. 120 at 4, citing R. 117 at 25-25, discussing <u>Fischer v. United States</u>, 603 U.S. 480 (2024); <u>Marinello v. United States</u>, 584 U.S. 1 (2018); and <u>United States v. Aguilar</u>, 515 U.S. 593 (1995).) On appeal in <u>Hernandez</u>, the Fourth Circuit reversed, with the panel majority holding that the defendant's obstruction of ICE's efforts to enforce an order of removal did not obstruct a "pending proceeding" within the meaning of § 1505.[2] Defendant contends that I should accordingly reconsider my previous decision and enter a judgment of acquittal under Fed. R. Crim. P. 29.[3]

---

[2]Defendant contends that the Fourth Circuit "held that obstructing an ICE arrest warrant (the same conduct charged in this case) does not constitute a violation of 18 U.S.C. § 1505." (R. 120 at 2; <u>but cf.</u> R. 120 at 4, stating that <u>Hernandez</u> involved "the execution of an ICE arrest warrant of removal".) That is incorrect. As will be further discussed below, in <u>Hernandez</u>, ICE was attempting to enforce an order of removal, not execute an arrest warrant.

[3]In the alternative, defendant argues I should order a new trial with proper instructions. If defendant is correct, however, retrial would be pointless, as the ICE removal action she obstructed would not be a "proceeding" under § 1505 as a matter of law.

11

(R. 120 at 2.)

Defendant states that the Hernandez majority held that "enforcement proceedings" are not "pending proceedings" as that term is used in 18 U.S.C. § 1505. (R. 120 at 4.) Specifically, while conceding that administrative investigations—not just adjudications—are covered, the court carved out enforcement actions. (R. 120 at 5.) Defendant further states that the Fourth Circuit in Hernandez likened the execution of a removal warrant to "mere police" activity, which has long been excluded from the definition of a proceeding under § 1505. (R. 120 at 5-6.) Defendant also notes that the majority in Hernandez cited Fischer, Marinello, and Aguilar in support of a narrowed construction of § 1505. (R. 120 at 6.) Finally, defendant stresses that the specific issue in Hernandez was one of first impression: no circuit had previously determined whether § 1505 encompassed immigration removal proceedings. (R. 120 at 6.)

Defendant concludes that this court repeatedly relied upon a district court decision that has now been reversed. In a case of first impression, the Fourth Circuit held on appeal that 18 U.S.C. § 1505 does not apply to a charge of obstructing the execution of an ICE warrant, as was alleged in this case. The proof at trial was that the only "proceeding" taking place was the execution of the ICE warrant for enforcement of removal; there was no ongoing and separate factual investigation undertaken, she contends. (R 120 at 7.) In short, defendant claims, the factual and legal record in this case cannot be squared with the Fourth Circuit's holding. (R. 120 at 8.)

The government responds that the majority opinion in Hernandez is neither binding nor persuasive, and thus fails to satisfy the "heavy burden" required for reconsideration. (R. 123 at 1.) The government notes that while defendant describes Hernandez as a case of first impression, there is a substantial body of caselaw, dating back 60 years to the Eighth Circuit's

12

decision in <u>Rice</u>, construing the term "proceeding" broadly for purposes of § 1505. (R. 123 at 2, collecting cases.) As this court noted in denying the Rule 29 motion initially, while none of these cases involved ICE arrests, "this simply reflects the fact that the statute applies to many different agency proceedings; it is no reason to disregard the manner in which these courts construed the key term." (R. 117 at 30.) The government argues that by charting a different path—placing ICE enforcement actions outside the scope of the statute—the <u>Hernandez</u> majority opinion is an outlier. (R. 123 at 3.)

The government continues that this court found the district court decision in <u>Hernandez</u>, which applied <u>Rice</u>, persuasive, and that the decision remains persuasive. This court did not make <u>Hernandez</u> the linchpin of its analysis. (R. 123 at 3.) Rather, the court focused on the consistency between the instruction given and previous caselaw, including the Seventh Circuit's observation in <u>Senffner</u> that the term proceeding is defined rather broadly for purposes of § 1505. (R. 123 at 3-4.) This consistency is more important, the government contends, than the outcome of the Fourth Circuit appeal. (R. 123 at 4.) The government criticizes defendant for failing to address <u>Senffner</u> in her motion for reconsideration, noting that the Seventh Circuit there held that the SEC's "investigation and <u>enforcement</u> of securities law violations" was a proceeding. 280 F.3d at 760 (emphasis added); <u>see also</u> <u>United States v. Hopper</u>, 177 F.3d 824, 831 (9th Cir. 1999) ("Additionally, <u>enforcement</u> of tax liens by the IRS is an IRS proceeding.") (emphasis added), <u>overruled in part on other grounds</u>, <u>United States v. Lucas</u>, 101 F.4th 1158 (9th Cir. 2024) (en banc).

The government argues that <u>Hernandez</u> is also distinguishable on the facts. In that case, the defendant was ordered removed, <u>in absentia</u>, by the Executive Office for Immigration Review in 2019, but remained a fugitive until 2023 when he was arrested on state charges. (R.

13

123 at 4.) After his release by the state, he was taken into ICE custody pursuant to a warrant of removal (I-205) but escaped before his planned deportation. (R. 123 at 4-5.) The district court found that the escape obstructed a pending proceeding, but the appellate panel majority concluded that ICE's execution of a removal decision already made by a different agency did not constitute a pending proceeding for purposes of § 1505. In the present case, conversely, defendant intervened earlier in the proceeding, before Flores-Ruiz's order of removal was reinstated and a warrant of removal was issued. (R. 123 at 5.) Following the steps set forth on the government's demonstrative exhibit, set forth on pages six to seven above, defendant obstructed the proceeding between steps seven and eight, while the defendant in Hernandez escaped after step 12, when all that was left to do was physical removal. (R. 123 at 6.)

The government further notes that even the Hernandez majority agreed an agency investigation into whether a person had violated federal law could be an existing proceeding. Here, ICE had such a secondary purpose: to determine whether Flores-Ruiz should be referred to the USAO for criminal prosecution under 8 U.S.C. § 1326. Indeed, such a referral was made and a prosecution undertaken against Flores-Ruiz. (R. 123 at 6.)

The government concludes that while the majority opinion in Hernandez did break new ground, it did so by marginalizing precedent, including from the Seventh Circuit, and ignoring the ordinary meaning of the words in § 1505 to exclude ICE enforcement efforts from the scope of the term "proceeding." (R. 123 at 6-7.) The government urges the court not to change course at this late hour and instead proceed to sentencing. (R. 123 at 7.)

In reply, defendant downplays the factual differences between this case and Hernandez. Essentially, she contends, the only difference is that in her case ICE issued an administrative warrant (I-200) before reinstating the prior removal order and issuing a warrant of removal (I-

14

205). (R. 124 at 2.) And, she notes, witnesses testified that these forms were both part of the same removal process. (R. 124 at 3, citing Trial Tr. at 223; <u>see also</u> Tr. at 526, noting that the I-200 is "more user friendly".) In any event, <u>Hernandez</u> squarely held that ICE enforcement actions were not "pending proceedings" under § 1505. In her case, government prosecutors and witnesses repeatedly told the jury that defendant obstructed an "enforcement action." (R. 124 at 3.) In <u>Hernandez</u>, as here, the government outlined separate procedural steps beyond the warrant at issue, which together constituted an enforcement "proceeding," yet the Fourth Circuit was unpersuaded. (R. 124 at 5-6.) In opposing reconsideration, the government argued that defendant obstructed the proceeding at an earlier stage but this, defendant contends, overlooks that the I-200 arrest was an effort to reinstate the previous removal order. In any event, if all steps are part of the same proceeding, it logically should not matter at which stage the interference occurred. (R. 124 at 7.) Defendant contends that subsequent contingencies, such as criminal prosecutions, are possible in every case in which a warrant is issued, particularly if the alien violated a prior removal order.[4] (R. 124 at 6.)

Defendant further replies that the <u>Hernandez</u> majority squarely addressed <u>Senffner</u>. (R. 124 at 7.) First, the majority noted that <u>Senffner</u> excluded "mere police activity" from the coverage of § 1505 (as other courts had done), and the majority found that ICE enforcement actions mirror traditional law enforcement activity. Second, the majority found that <u>Senffner</u> dealt with pending litigation in federal court, unlike the isolated enforcement action at issue with the execution of an ICE arrest warrant. Third, the majority noted that <u>Senffner</u> pre-dated

---

[4]It appears the alien in <u>Hernandez</u> was not subject to a § 1326 prosecution for illegal reentry for the simple reason that he (unlike Flores-Ruiz) never left the country after the initial removal order was entered.

15

Fischer and Marinello, which cautioned against a broad reading of obstruction statutes. (R. 124 at 8.) Defendant concludes that at worst Senffner is silent on the subject of ICE enforcement, meaning this is an issue of first impression. (R. 124 at 9.)

Defendant complains that, while the government was content to press reliance on the district court's decision in Hernandez previously, it now seeks to downplay the case's significance. (R. 124 at 9-10.) The Fourth Circuit is the only appellate court to consider whether obstruction of an ICE administrative warrant violates § 1505, and its decision provides compelling grounds for this court to reconsider. (R. 124 at 10.) Finally, defendant argues that the Fourth Circuit's decision suggests ambiguity in § 1505, such that the rule of lenity comes into play in her favor. (R. 124 at 10.)

## B.    Analysis

### 1.    Hernandez

I begin with a detailed discussion of Hernandez. Dennis Zeledon Hernandez (Zeledon), a native of El Salvador, crossed the U.S. border in Texas in July 2016. On encountering border patrol agents, he made an asylum claim and was released on bond pending a hearing to address the claim before the Executive Office for Immigration Review (EOIR). Zeledon failed to appear for his December 2019 hearing, so the immigration court ordered him removed in absentia. 173 F.4th at 96. He remained a fugitive until May 2023, when he was arrested by state authorities for drunk driving and other charges. Id. at 96-97, 104. At that point, ICE issued a warrant for his removal, and he was transferred to ICE custody. ICE scheduled his removal for July 12, 2023, but he escaped from custody on July 2, 2023. Zeledon was arrested five days

16

later, and the government subsequently charged him with a violation of 18 U.S.C. § 1505,[5] alleging that he obstructed a pending proceeding when he escaped ICE custody to prevent ICE's enforcement of the order of removal issued by EOIR. Id. at 97.

Zeledon moved to dismiss the § 1505 count, arguing that no immigration court proceeding was pending at the time of his escape. The district court denied the motion, citing the broad construction of the term "proceeding" from Rice and other cases, and holding that execution of an EOIR-issued removal order was a proceeding under the statute. Id.

On appeal, Zeledon argued that he did not obstruct a "proceeding" because the term only includes the steps leading to the conclusion of the agency's decision-making process. Id. at 97-98. As a result, he argued, the district court erroneously extended § 1505 to include ICE enforcement actions. The government responded that the term "proceeding" extended to agency enforcement operations, so it encompassed ICE's enforcement of EOIR's order of removal. The government further argued that ICE's execution of a removal warrant is itself a pending proceeding under § 1505. Id. at 98.

The panel majority rejected these arguments and vacated Zeledon's conviction. Id. First, after stressing that the proceeding at issue must be "pending" "before" the agency, id. at 99, the majority held: "Read together, ICE's execution of the immigration court's judgment cannot be part of the proceedings before the immigration court because the hearing before the immigration court had concluded—Zeledon was no longer 'awaiting decision' from the immigration judge." Id. at 100. Citing immigration regulations, the majority noted that the EOIR's order of removal became final immediately upon entry, such that no EOIR proceedings were

---

[5]The government also charged him with escape under 18 U.S.C. § 751(a), but that charge is irrelevant here.

17

pending at the time of Zeledon's escape. Id.

Recognizing the caselaw requiring the term "any proceeding" be construed broadly, the majority likened ICE's action in this case to "mere police" activity, which courts had long excepted from § 1505. "ICE's actions in this case mirror traditional law enforcement activity." Id. The majority further distinguished Senffner and Hopper, both of which involved agency enforcement actions, because:

> Neither agency was engaged in isolated enforcement activity; instead, both agencies sought enforcement based on that same agency's investigation of legal violations. . . . Put another way, the agency's enforcement action in both cases facilitated an existing proceeding: the agency's effort to determine if individuals had violated federal law. Neither case permits us to find that ICE's execution of a warrant, which occurred after EOIR determined that Zeledon should be removed, was part of a pending proceeding before EOIR.

Id. at 101-02.

Finally, the majority dismissed the government's argument that use of the word "any" in the statute supported conviction, citing Fischer, Marinello, and the rule of lenity. "The plain text of § 1505 forecloses us from adopting the Government's reading of the statute, and Zeledon's conviction under § 1505 must be vacated." Id. at 102.

Regarding the government's second argument, the majority held that ICE enforcement proceedings are not pending proceedings being had before ICE for purposes of § 1505. Id. The majority conceded, as required by precedent, that the statue covers more than agency adjudications; it also covers agency investigations. Id. However, after noting that "factual investigations generally enable the adjudicative process," and citing the definition of the term "administrative proceeding" from Black's Law Dictionary, the majority concluded that enforcement actions are excluded. Id. at 103.

The government noted that ICE, like the NTSB (whose investigation was at issue in

18

Kirst), has the power to take oaths and issue subpoenas, but the majority responded that "an agency's possession of these powers does not turn any action by that agency into a 'proceeding.'" Id. at 103.

> [W]hile the Government argues that ICE's power to swear out subpoenas and issue warrants in an investigation turns its enforcement actions into a "proceeding," possessing such powers alone is not enough. Instead, what matters is the context in which the agency exercises such powers and how those powers assist the agency in the relevant functions. See Senffner, 280 F.3d at 761 (noting the authority to "issue subpoenas and administer oaths" was relevant in the investigatory context). Here, ICE was tasked with executing a warrant of removal. And when enforcing a warrant of removal, ICE wields neither power to further an adjudicative process. That difference distinguishes the case before us from Kirst.
>
> Here, too, we find the Government's reliance on Senffner and Hopper unpersuasive. As discussed above, neither case concerns an agency's pure enforcement action. The enforcement actions taken in those cases extended from the agency's investigations. In contrast, ICE was merely executing a warrant of removal pursuant to an EOIR judgment. The Government has not pointed to—and we could not identify—a case where an agency's execution of a decision already issued by a different agency constituted a proceeding under § 1505. Neither case empowers us to read § 1505 to encompass isolated ICE's execution of a warrant of removal.

Id. at 103-04.

> Judge Wilkinson issued a lengthy dissent, stating that:
>
> the majority consults technical definitions and recasts case law across the country to conclude that a "proceeding" artificially ends at the close of some ill-defined decisionmaking process. But the word's ordinary meaning captures a continuum of targeted actions spanning investigations, adjudications, and enforcement alike. Indeed, enforcement of legal decisions is often part and parcel of the legal decisionmaking process itself.

Id. at 104 (Wilkinson, J., dissenting.)

Judge Wilkinson began with the key term—"proceeding"—which lay and law dictionaries alike consistently describe in broad terms. Id. Similarly, court decisions dating back at least six decades to Rice uniformly hold that the term should be construed broadly. Id. at 104-05

19

(collecting cases from the Second, Third, Sixth, Seventh, Ninth, and Tenth Circuits). Turning to this case, Judge Wilkinson stated:

> Congress envisioned a "proceeding" as a continuing sequence of investigation, adjudication, and enforcement, which it wished to "proceed" seamlessly and unobstructed. The majority, by contrast, would chop this whole process into little pieces, demarcated by court decisions which will take years to play out. As it sees things, "proceeding" refers only to the steps leading up to an agency's decision and thus excludes any subsequent enforcement. Maj. Op. at 5-6. To get there, the majority shirks all the case law above, and in so doing shrivels Congress's intention to have those like Zeledon, who seek to frustrate the implementation of court removal orders, liable under § 1505.

Id. at 105. In arbitrarily excluding enforcement, the majority effectively deleted the term "any" from the statute. Id. at 105-06.

Judge Wilkinson further noted that the majority's focus on adjudication overlooked the fact that § 1505 is directed at administrative agencies, whose powers are different than and generally exceed those of courts. Id. at 106. While courts are largely adjudicative bodies, agencies often wield significant investigative and enforcement powers—frequently in aid of courts, but which courts themselves cannot replicate. Id. Given these differences, it makes little sense, Judge Wilkinson explained, to invoke such narrow definitions in the context of § 1505. Id. at 107. "Taking everything together, § 1505 proscribes specific interference with any ongoing series of actions, conducted in a manner prescribed by law, that an agency performs to accomplish a targeted objective." Id.

Judge Wilkinson continued that the majority's concession that investigations are covered undercut its ordinary-meaning argument, i.e., that "pending" and "being had before" require some ongoing decisionmaking process before a tribunal. "Section 1505 either criminalizes obstruction of more than just adjudications, or it does not. The majority cannot have it both ways." Id.

20

Indeed, Judge Wilkinson noted, at least two sister circuits had already applied § 1505 not only to investigations, but also to enforcement. Id. at 107-08 (citing United States v. Hopper, 177 F.3d 824; United States v. Senffner, 280 F.3d 755). In Hopper, the defendants were convicted under § 1505 for trying to use a fraudulent monetary instrument to satisfy a judgment that a federal court had awarded to the IRS. 177 F.3d at 828-29. On appeal, they argued that their conduct at most obstructed the court's judgment, not an agency's proceeding, and thus fell outside of § 1505. Id. at 830. But the Ninth Circuit rejected this argument, stating that the defendants' fraud, had it worked, "would have precluded collection of the tax debt and the enforcement of the IRS tax liens." Id. The court added that "[u]ntil the debt behind those liens was satisfied, the collection proceeding before the IRS continued." Id. And in Senffner, the defendant hid assets from the SEC that were subject to a district court's temporary restraining order. 280 F.3d at 759. Appealing his § 1505 conviction, the defendant "argue[d] that he only obstructed the district court, not the SEC" because the agency "had no independent authority to freeze or distribute assets, or to impose civil penalties." Id. at 760. The Seventh Circuit disagreed, explaining that the SEC's "proceeding did not end by virtue of the filing of the lawsuit" and that the defendant's attempted obfuscation "obstructed the district court and, as a consequence, the SEC's initial investigation and enforcement of securities law violations (an SEC proceeding)." Id. Judge Wilkinson explained that just as a defendant runs afoul of § 1505 by interfering with the IRS's enforcement of a judgment or the SEC's enforcement of a temporary restraining order, so too did Zeledon by interfering with ICE's enforcement of the removal order. 173 F.4th at 108. He concluded:

> The statute speaks of "any" pending proceeding, not some small subset of proceedings that the majority envisions. Moreover, a proceeding remains pending when the very order of the proceeding lies idle and unenforced. Courts not

21

infrequently rely on agencies of one sort or another to enforce their orders, and obstruction of the agency's efforts fits right in with the language of § 1505. See Hopper, 177 F.3d at 830-31; Senffner, 280 F.3d at 760-61. Lacking any basis to distinguish these cases, then, the majority departs in substance from them. Worse still, it does so without even giving these courts the respect to acknowledge the circuit split it has made.

Id. at 108.

Finally, Judge Wilkinson responded to the majority's comparison of ICE removal operations to routine law enforcement activities:

To reiterate, "proceeding" and "the due and proper administration of the law" refer to a continuum of targeted agency actions, not, say, the one-off decisions of an officer (or indeed an ICE agent) on the beat. Here, such targeted action began at the latest when ICE—pursuant to a removal order—detained Zeledon. This targeted action persisted across ICE's preparations to remove him, such as when it examined his health and transferred him between facilities. And the targeted action remained active when Zeledon, only a few days before his scheduled removal, escaped custody. None of ICE's involvement was the stuff of rote police work. Rather, it applied a host of laws laden with agency discretion to effectuate the order of an Immigration Court. In the process, the agency operated under "any pending proceeding."

Id. at 109.

### 2.    Other Pertinent Caselaw

While Hernandez appears to be the only case directly addressing ICE removal actions under § 1505,[6] other courts have addressed the scope of the statute, including its potential application to agency "enforcement" activities. I begin with Senffner, the leading case from the Seventh Circuit. That case involved a somewhat complicated factual backdrop. 280 F.3d at

---

[6]As the government noted at oral argument, in United States v. Abrams, 427 F.2d 86 (2nd Cir. 1970), the court upheld a conviction under 18 U.S.C. § 1505 for influencing a witness to lie to the Immigration and Naturalization Service (INS). The court stated: "Nor do we think there can be any doubt that an application for voluntary departure is a 'proceeding' within the intent of 18 U.S.C. § 1505 (1964)." Id. at 90. However, the court engaged in no further analysis of the meaning of the term.

22

758-59. Summarized, the Securities and Exchange Commission (SEC) investigated the defendants for a variety of investment schemes involving the Chicago Housing Authority (CHA), then filed a lawsuit seeking civil penalties and interest; a temporary and permanent injunction restraining further securities violations; and a freeze of assets. The district court issued a temporary restraining order (TRO), freezing the assets of one of the involved entities, called CCI. Id. at 759. Senffner schemed to redirect some of the funds subject to the TRO, leading to charges for contempt of court under 18 U.S.C. § 401(3), obstruction of justice (in relation to the SEC lawsuit) under 18 U.S.C. § 1503, and obstruction of a proceeding pending before the SEC under 18 U.S.C. § 1505. Id.

After a jury convicted him of all three counts, Senffner appealed, challenging, inter alia, the sufficiency of the evidence on the § 1505 count. Id. at 759-60. As is pertinent here, Senffner argued that the evidence was insufficient to convict him of obstruction of a proceeding pending before the SEC because the SEC had no independent authority to freeze or distribute assets, or to impose civil penalties, but needed to obtain an order from the federal district court. He claimed that he only obstructed the district court, not the SEC. The Seventh Circuit rejected his argument, as "he obstructed both." Id. at 760. The court explained:

> The SEC, as a government agency, can only act through individuals or other instrumentalities using the enforcement mechanisms it has available. These mechanisms may be internal or involve other entities, including the federal courts. Therefore, whenever an entity acting for or at the direct request of an agency has been obstructed, the agency itself has also been obstructed. See, e.g., United States v. Aguilar, 515 U.S. 593, 600 (1995) (recognizing that although no obstruction occurs when an individual lies to FBI agents who might or might not testify before a grand jury, it may occur if the "agents acted as an arm of the grand jury, or indeed that the grand jury had even summoned the testimony of these particular agents"). The fact that an agency cannot perform a particular function itself or through its own labor is of no moment; rather the question is whether the agency proceeding affirmatively, by its specific actions, seeks to have the particular function performed as part of the proceeding.

23

> The purpose of the SEC's initial proceeding, investigating the securities law violations of Lauer, Senffner, and CCI, was not solely to investigate those violations for the sake of exposing them, but also to identify and recover CHA funds involved in the violations to remedy them. More to the point, that proceeding did not end by virtue of the filing of the lawsuit. To the contrary, the SEC prosecution of the lawsuit was a natural extension of that proceeding, and its efforts to recover and return the funds were necessary to achieve its goal. By obstructing the recovery of CHA funds, Senffner obstructed the district court, and, as a consequence, the SEC's initial investigation and enforcement of securities law violations (an SEC proceeding), which sought the return of the funds.

Id. at 760 (footnote omitted).

The court further noted that the SEC's tracing of the funds could constitute a separate investigation, also a "proceeding," even though the SEC lawsuit was already in progress and the SEC used the district court's process rather than its own. "An SEC investigation is a 'proceeding'—a term that is defined rather broadly—for the purpose of section 1505." Id. at 761. The court further cited the Ninth Circuit's decision in Hopper, 177 F.3d at 830-31, where the court held that the enforcement of tax liens by the IRS is an IRS proceeding:

> Although Senffner tries to distinguish Hopper by pointing out that in that case the IRS was owed the particular debt, and the district court did not take control of the property involved there, neither distinction is persuasive. The SEC's interest, that the securities laws are properly enforced, is a concrete interest and it does not matter that the SEC was not itself actually harmed. The injury to its interest, the securities law violations in this case, could only be remedied if the funds were returned to their proper owner in accordance with the law. Not until that occurred was the agency proceeding completed. Whether the district court had control of the property or not is simply a rerun of Senffner's first argument, which we have already rejected.

280 F.3d at 761.

Hopper also presented a complicated factual backdrop involving the defendants' attempts to avoid paying taxes. 177 F.3d at 827-29. As is pertinent here, an Assistant United States Attorney, representing the IRS, obtained a judgment in federal court for unpaid taxes, which the defendants sought to satisfy with a phony instrument, id. at 828-29, leading to

24

charges under § 1505 for obstructing a proceeding before a department or agency of the United States, i.e., the IRS. The defendants argued that their actions may have obstructed the judgment of a federal court, but because federal courts are not "departments" or "agencies," they should not have been charged under § 1505. Id. at 830. The Ninth Circuit was unconvinced: "If accepted, the phony [instrument] would have precluded collection of the tax debt and the enforcement of the IRS tax liens. Until the debt behind those liens was satisfied, the collection proceeding before the IRS continued." Id. Specifically addressing the contention that the obstruction affected only the court, not the IRS, the Ninth Circuit said:

> [I]n this case, the IRS was a party to the judicial proceeding, and the phony [instrument] had the "natural and probable" effect of obstructing collection of delinquent taxes by the IRS. Additionally, enforcement of tax liens by the IRS is an IRS proceeding. The fact that the IRS was required to enforce its lien in federal court does not change the IRS's involvement. It was an IRS tax lien, prosecuted by an Assistant United States Attorney representing the IRS, and any money collected would have been paid to the IRS.
> . . .
> Because collection of delinquent taxes is an IRS proceeding, the [defendants] were properly convicted under 18 U.S.C. § 1505.

Id. at 831.

Other leading cases stress the broad scope of § 1505, without necessarily discussing enforcement actions. In Kelley, an employee of the United States Agency for International Development (USAID) conspired to solicit kickbacks from contractors on agency projects, and then conspired to conceal his activities. 36 F.3d at 1120. As is pertinent here, he was charged with obstruction under § 1505 for attempting to deceive investigators from USAID's Inspector General's Office. Id. at 1123. On appeal, the defendant-employee challenged his § 1505 conviction, arguing that the government failed to establish the existence of a "proceeding." Id. at 1127. Specifically, he claimed that § 1505 applies only to adjudicatory or rule-making

25

activities, not wholly investigatory activity. Id. The D.C. Circuit noted that other courts had held that agency investigative activities are proceedings within the scope of § 1505. "In those cases, the investigations typically have involved agencies with some adjudicative power, or with the power to enhance their investigations through the issuance of subpoenas or warrants." Id. The court acknowledged that for an investigation to be considered a proceeding, it must be more than a "mere police investigation." Id. But courts had held that investigations by an agency with the authority to issue subpoenas and administer oaths in conjunction with the investigation would qualify as a § 1505 proceeding. Id. The Kelley court explained:

> The Inspector General's office of AID is charged with the duty of supervising investigations relating to the proper operation of the agency. See 5 U.S.C. app. 3 § 2. In addition, the Inspector General is empowered to issue subpoenas and to compel sworn testimony in conjunction with an investigation of agency activities. Accordingly, the Inspector General's inquiries, albeit preliminary, constitute a "proceeding" within the meaning of § 1505.

Id.

In Kirst, the defendant lied to the National Transportation Safety Board (NTSB) during its investigation of a plane crash, leading to charges under § 1505. On appeal, he challenged his conviction, arguing that the NTSB investigation was not a "proceeding" within the meaning of § 1505. 54 F.4th at 612. Specifically, he argued that proceedings under § 1505 include only proceedings where an agency has regulatory or adjudicative authority, both of which the NTSB lacks during an accident investigation. Id. at 619. The court rejected his argument, noting that it is "settled law in this circuit that, as a general matter, an administrative investigation is a 'proceeding' within the meaning of § 1505." Id. at 620. Relying on Kelley, the court held that the NTSB's investigation was not a "mere police investigation" because the NTSB had the power to issue subpoenas and compel testimony under oath. Id. at 621. Relying on Aguilar and

26

Marinello, the dissenting judge in Kirst argued that the NTSB investigation was not a proceeding because the agency lacked enforcement power.[7] Id. at 622. But the majority saw nothing in those cases restricting the statute to:

> obstruction of enforcement as distinct from obstruction of an investigation that might, or might not, lead to enforcement. It is sufficient under Marinello that a defendant be charged with obstructing "a particular investigation."

> Neither Aguilar nor Marinello supports our colleague's conclusion that in order for obstruction of an investigation to constitute a violation of § 1505, the investigation must be by an agency that has enforcement authority against a party to the investigation.

Id. at 623 (internal citation omitted).

Finally, Schwartz involved complicated facts involving illegal arms shipments. 924 F.2d at 413-16. As is pertinent here, two of the defendants attempted to ship rifles and ammunition from the United States to Poland, making false statements about the flight plan to customs officials investigating the shipment, id. at 415-16, leading to charges under § 1505 for obstructing the customs investigation, id. at 422. On appeal, the defendants argued that the Customs Service's interview with them was not an "agency proceeding" within the meaning of § 1505. Id. at 422. The Second Circuit noted that the term "any proceeding" as used in § 1505 has been defined broadly, encompassing both the investigative and adjudicative functions of a federal agency. Id. at 423. The court accordingly held that "the Customs Service's investigation into whether it should formally seize the arms detained at Kennedy Airport was a 'proceeding' under § 1505. Consequently, we conclude the Customs Service's interview of Berg and Schwartz falls within the meaning of a 'proceeding' under § 1505." Id.

---

[7]The ability to suspend a pilot's license, which also happened in Kirst, rests with the FAA. Id. at 614.

27

To be sure, there are cases imposing limits on the reach of § 1505. For instance, in United States v. McDaniel, No. 2:12-CR-0028, 2013 U.S. Dist. LEXIS 110475, at *4 (N.D. Ga. Jan. 29, 2013), adopted, 2013 U.S. Dist. LEXIS 109379 (N.D. Ga. Aug. 5, 2013), the court held that an FBI criminal investigation is not a "proceeding" for purposes of § 1505. The court acknowledged the term "proceeding" is defined broadly. But "[e]ven a broad definition has limits and in this instance, courts have generally found that only agencies that engage in rulemaking, adjudicative, or civil enforcement activities conduct 'proceedings' for purposes of § 1505." Id. at *6. The court collected cases finding the statute did not apply to purely criminal investigations by federal law enforcement agencies. Id. at *6-9. "Even in cases where the courts found that agency investigations were 'proceedings' under § 1505, the courts distinguished investigations conducted by agencies with adjudicative, rulemaking, or civil enforcement authority, such as the Internal Revenue Service ("IRS"), the Securities and Exchange Commission ("SEC"), or the Food and Drug Administration ("FDA"), from criminal investigations performed by law enforcement agencies without such authority, such as the FBI." Id. at *10-11.

### 3.    **Hernandez Does Not Support Reconsideration**

The present case arose in a somewhat different factual context than Hernandez, one that makes it impossible to rely on the majority's resolution of the government's first argument (even if otherwise persuasive). Recall that in Hernandez, the EOIR had already ordered Zeledon be removed; after learning of his arrest, ICE issued a warrant of removal and took him into custody; a few days before his scheduled removal, Zeledon escaped. The majority rejected the government's attempt to include ICE's efforts to complete the deportation within the earlier EOIR proceeding, which had already reached the point of decision with a final order of removal. The majority distinguished Senffner and Hopper because in those cases the agency's

enforcement actions facilitated an existing proceeding: the agency's effort to determine if individuals had violated federal law. 173 F.4th at 101-02.

In the present case, ICE undertook an investigation to determine whether Flores-Ruiz was in the country unlawfully, as discussed above. After the agency determined there was probable cause, a warrant for his arrest issued. After the arrest occurred, Flores-Ruiz was given an opportunity to contest the prior order of removal and/or make an asylum claim. Only after he declined to do so was the removal order reinstated and the warrant of removal signed. In other words, the arrest defendant obstructed was part of ICE's investigation seeking to determine whether Flores-Ruiz had violated federal law by returning to the United States without permission. Unlike in Hernandez, at the time of the obstructive conduct in this case there was no final order of removal (assuming the correctness of the panel majority's conclusion that entry of such an order marks the end of a removal proceeding).[8]

In rejecting the government's second argument—that ICE enforcement actions are themselves "proceedings"—the majority read § 1505 to cover adjudications and factual

_____

[8]The Hernandez majority's apparent conclusion that one agency cannot assist another with enforcement as part of the same "proceeding" is hard to reconcile with Senffner. As the Seventh Circuit explained:

> The SEC, as a government agency, can only act through individuals or other instrumentalities using the enforcement mechanisms it has available. These mechanisms may be internal or involve other entities, including the federal courts. Therefore, whenever an entity acting for or at the direct request of an agency has been obstructed, the agency itself has also been obstructed. . . . The fact that an agency cannot perform a particular function itself or through its own labor is of no moment; rather the question is whether the agency proceeding affirmatively, by its specific actions, seeks to have the particular function performed as part of the proceeding.

280 F.3d at 760 (emphasis added). An ICE removal action seeking to enforce an EOIR order would seem to fit comfortably within this framework.

29

investigations that enable the adjudicative process, but not enforcement actions. See 174 F.4th at 102-04. However, aside from one definition from Black's Law Dictionary, id. at 103, the majority cited no authority for the blanket exclusion of enforcement. As indicated above, the caselaw, including from the Seventh Circuit, is to the contrary. See Senffner, 280 F.3d at 760 (referring to the "investigation and enforcement" of securities laws violations); Hopper, 177 F.3d at 831 ("Additionally, enforcement of tax liens by the IRS is an IRS proceeding.").

The Hernandez majority attempted to distinguish what it called "pure enforcement actions"—actions seeking to enforce an order previously issued by another agency or court—from the enforcement activity at issue in Senffner and Hopper. See 173 F.4th at 103. As indicated in note 8, supra, Senffner does not appear to support this distinction. In any event, ICE was not in this case seeking to enforce an order already issued by a different agency; rather, as discussed above, ICE conducted its own investigation, issued an arrest warrant, then reinstated the previous order of removal, and, finally, removed Flores-Ruiz from the country. To use the majority's language, ICE's enforcement action here "extended from the agency's investigation[]." Id. at 103. This was not the "isolated . . . execution of a warrant of removal." Id. at 104.[9]

---

[9]The Hernandez majority also likened ICE enforcement actions to "mere police" activity, 173 F.4th at 102, but it must be noted that ICE, like other agencies whose investigations have been found to be proceedings for purposes of § 1505, can issue subpoenas and administrative warrants. See Kelley, 36 F.3d at 1127; Kirst, 54 F.4th at 621; see also McDaniel, 2013 U.S. Dist. LEXIS 110475, at *10-11 (noting that "courts distinguished investigations conducted by agencies with adjudicative, rulemaking, or civil enforcement authority . . . from criminal investigations performed by law enforcement agencies without such authority"). The majority noted that in a removal action ICE does not wield these powers to further an adjudicative process, 174 F.4th at 103, but that may vary from case to case. In the present case, for instance, ICE issued a warrant as part of its investigation and adjudication of Flores-Ruiz's removal. Moreover, courts have not required such investigative tools be used for adjudication or enforcement. See Kelley, 36 F.3d at 1127 ("[T]he Inspector General's inquiries, albeit

30

In sum, the <u>Hernandez</u> majority opinion provides no persuasive justification for excluding the ICE proceeding at issue in this case from the coverage of § 1505. Reading <u>Hernandez</u> more broadly—to exclude <u>all</u> ICE enforcement and removal operations, regardless of the stage, from § 1505—cannot be reconciled with the plain language of the statute ("any pending proceeding") or the existing caselaw. <u>See</u> <u>Senffer</u>, 280 F.3d at 761 (holding that an SEC proceeding continues until the funds are returned to their proper owner); <u>Hopper</u>, 177 F.3d at 830 (holding that an IRS proceeding continues until the debt is collected). Perhaps the Seventh Circuit will pare back its obstruction caselaw based on the authorities defendant cites, but it is not for this court to anticipate such a change.

At oral argument, defendant noted that ICE goes out every day to try to arrest people on the street. Given the estimated 10 million undocumented persons in the United States, does that mean there are 10 million pending proceedings? Defendant insists that there needs to be some formality, i.e., a proceeding before an agency involving parties trying to come to a determination, an adjudication. (Oral Arg. Tr. at 6-7.)

The problem for the defense is that this case did not involve some random encounter on the street. It was a targeted operation, conducted pursuant to agency procedures, including the issuance of an arrest warrant for a specific person, Eduardo Flores-Ruiz. After the arrest of Flores-Ruiz, ICE followed its procedures for reinstatement of the previous order of removal, determining that he should be removed from the country. While this did not involve a contested hearing in front of an immigration judge or other authority, that is because Flores-Ruiz declined

---

preliminary, constitute a 'proceeding' within the meaning of § 1505."); <u>see also</u> <u>Kirst</u>, 54 F.4th at 623 (holding that obstructing an investigation qualifies, whether or not it leads to enforcement).

31

to challenge the previous order or make a claim for asylum.

Defendant also compares what happened in this case to mere police activity, similar to what law enforcement does every day, e.g, obtaining warrants and then arresting suspects. (Oral Arg. Tr. at 7, 26, 29.) Defendant argues that ICE was acting as a law enforcement agency here. But this ignores the fact that, unlike, say, the FBI, ICE can issue its own warrants and adjudicate and effectuate a removal, as it did with Flores-Ruiz, without the involvement of a court. This makes a difference under § 1505. See Kelley, 36 F.3d at 1127.

## IV. CONCLUSION

For all of these reasons, defendant cannot satisfy the burden required for reconsideration.

**THEREFORE, IT IS ORDERED** that defendant's motion for reconsideration (R. 119) is denied.

Dated at Milwaukee, Wisconsin, this 16th day of June, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

32